Douglas A. Axel (SBN 173814)
daxel@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Attorney for Defendant
ANDRES MATIAS BERMUDEZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  vs.<br><br>ANDRES MATIAS BERMUDEZ,<br><br>  Defendant. | Case No. 2:21-cr-00421-AB<br><br>**DEFENDANT ANDRES MATIAS BERMUDEZ' SENTENCING MEMORANDUM; EXHIBIT A**<br><br>Sentencing Date: July 15, 2022<br><br>Assigned To: Hon. André Birotte, Jr. |

## I. INTRODUCTION

Defendant Andres Matias Bermudez, 38 years old, stands before the Court having pled guilty to a single count of Distribution of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). Bermudez, caught up in the government's investigation into sales of illegal narcotics on the darknet, brokered a single wholesale delivery of methamphetamine to Mark Chavez in February 2020. At the time of the offense, Bermudez was addicted to heroin and methamphetamine, living out of his car and an RV. Having long since lost his stable employment in construction, he brokered the transaction mainly to support his own habit. As the Probation Officer has recognized, Bermudez' offence was unsophisticated, did not involve possession of a firearm or any leadership role, and resulted from his own drug addiction.

Bermudez has strong family support, including loving parents and siblings, and four school-age children who desperately want to see their father out of prison again. He has fully accepted responsibility for his offense. He has never before served a federal sentence and is grateful that, while in federal custody, he is no longer addicted to narcotics and can envision a drug-free life outside of prison. He looks forward to participating in the educational and treatment programs BOP may offer.

Were it not for the statutory mandatory minimum sentence of 10 years imprisonment, Bermudez would be asking the court to sentence him to a significantly lesser sentence, comparable to the sentences the Court already has imposed on other defendants in related cases. For the reasons described below, Bermudez respectfully submits that the Court should impose a sentence that is no higher than the statutory mandatory minimum of 120 months.

## II. BACKGROUND

### A. The Offense Conduct

Defendant Bermudez was caught as part of the government's investigation into sales of illegal narcotics on the darknet. In 2019 and 2020, federal law enforcement

investigated a group of darknet drug vendors operating under the names "HectorsMom," "Stealthgod," and others, which collectively made over 18,000 retail sales of illegal drugs on the darknet. (*See* Complaint at 7, CR 1 (9/18/20)). On February 11, 2020, law enforcement executed search warrants and arrested several individuals involved in the illegal darknet operations, including Mark Chavez, Thomas Olayvar, Matthew Ick, Rane Melkom, and Teresa McGrath. *Id.* at 8-9. During the search, officers found (at two residences associated with these individuals) four loaded handguns, methamphetamine, MDMA, and various paraphernalia associate with a complex drug distribution operation that delivered illegal drugs to retail customers in over 35 states across the country. (*Id.* at 9-10).

Defendant Bermudez was not involved with any of these internet retail distribution operations. Rather, he was charged with brokering a single delivery of between 32 and 37 pounds of methamphetamine to Mark Chavez on February 20, 2020. Additionally, when Bermudez was stopped for a traffic violation on March 28, 2020, he had in his car 58 grams of methamphetamine which he contended was for his personal use.

Bermudez was not the ultimate supplier of the methamphetamine delivered to Chavez. Rather, Bermudez – a drug addict and regular heroin and methamphetamine user who was largely living out of his car and an RV during the time of the offense conduct (*see id.* at 14-18) – was merely a middle man who engaged in the transaction primarily to supply his own addiction.

On September 18, 2020, the FBI obtained a search warrant for Bermudez' car and RV, as well of the home of his parents and children in Palmdale, California. (CR 1). Significantly, the government has not produced from those searches any evidence of criminal activity, further corroborating that Bermudez is a drug addict who brokered the transaction with Chavez opportunistically, in order to feed his habit.

B. The Charge and Plea Agreement

Bermudez was charged in a criminal complaint filed on September 18, 2020. (CR 1). He made his initial appearance on August 16, 2021 and was ordered detained pending trial. On September 10, 2021 (following a waiver of indictment), the government filed an information charging Bermudez with two narcotics offenses: (1) distribution of "approximately 16.619 kilograms of methamphetamine" to Mark Chavez on February 10, 2020 and (2) possession with intent to distribute "approximately 58 grams" of methamphetamine that was found in his car at the time of a traffic stop on March 28, 2020. (CR 23).

In a plea agreement filed on February 17, 2022, Bermudez agreed to plead guilty to Count One of the information, and the government agreed to dismiss Count Two. (CR 37). As part of the plea agreement, the parties agree that Bermudez distributed "at least 14,460 grams of actual methamphetamine" to Chavez on or about February 10, 2020. (*Id.* at 6 ¶ 12). Pursuant to the agreement, the parties have stipulated to a Sentencing Guidelines base offense level 38. (*Id.* ¶ 14).

C. The PSR and Government's Sentencing Position

The revised Presentence Report, disclosed on May 26, 2022,[1] calculates Bermudez' total Offense Level (after a three-level reduction for acceptance of responsibility) to be 35, and his Criminal History Category to be VI, resulting in a Guideline range of 292 to 365 months. His criminal history score is driven primarily by two domestic violence convictions, one in 2010 and one in 2013. (*See* PSR ¶¶ 35, 36.) Both of these involve the mother of his four children, Adriana Diaz, who was deported in 2015 or 2016. (*Id.* ¶ 53.) Apart from these two convictions, Bermudez's Criminal History Category would be I. (*Id.* ¶¶ 32-37.) As a result of these two

---

[1] The original Presentence Report erroneously attributed a June 2021 conviction to defendant, when in fact it resulted from a case of mistaken identity and involved an entirely different individual with the same name. (*See* CR 47, *Addendum to the Presentence Report* (May 26, 2022)).

convictions, according to the PSR, his Criminal History Category jumps to VI pursuant to the "career offender" provision of U.S.S.G. § 4B1.1. (PSR ¶ 38.)

In her revised recommendation letter, the Probation Officer recommends a sentence of 200 months, reasoning that Bermudez' offence was unsophisticated, did not involve possession of a firearm or any leadership role, and resulted from a drug addiction. (CR 45). The Probation Officer also recognizes that the time Bermudez spent in state custody on the April 2020 conviction for methamphetamine possession warrants a downward departure because such conduct "is considered relevant conduct to the instant offense." (*Id.* at 5.) Additionally, a lengthy federal term of imprisonment and supervised release "are likely to have a deterrent effect as they are for a much longer period than ever imposed and include conditions for monitoring Bermudez in the community." (*Id.*) Finally, the Probation Officer notes Bermudez' close relationship with his parents and his children, and his history of stable employment as a skilled masonry worker and construction supervisor before his state incarceration in 2013 (when he first became addicted to heroin). (*Id.*)

The government does not object to the PSR's offense level or criminal history calculations. (CR 42.) The government also recommends a two-level downward variance based on defendant's timely acceptance of responsibility and agreement "to proceed in a manner that lessened the burden on the court system in the midst of the COVID-19 pandemic." (*Id.* at 3.) The government also recommends crediting defendant with the 16 months he spent in state custody on the April 2020 methamphetamine conviction, resulting in a government recommendation of 219 months in prison. (*Id.* at 4.) Despite expressly recognizing the importance of avoiding unwarranted sentencing disparities, (*id.* at 7), the government in its sentencing papers makes no attempt at comparing Bermudez' culpability to that of other defendants – including Olayvar and Ick – who already have been sentenced by

this Court to terms of imprisonment that are significantly less than the 219 months the government recommends here.

## III. DEFENDANT'S SENTENCING POSITION

Bermudez faces a mandatory minimum sentence of 10 years imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A)(viii). Were it not for this statutory mandatory minimum, Bermudez would be arguing for a sentence significantly less than 10 years imprisonment. Because a sentence of 120 months (10 years) imprisonment is significantly more than is necessary to satisfy the purposes of sentencing prescribed by 18 U.S.C. § 3553(a), the Court should impose a sentence that is no higher than the statutory minimum sentence of 120 months.

### A. The Nature and Circumstances of the Offense

As the Probation Officer recognizes, Bermudez' offense "was relatively simple and easily discoverable." (CR 45 at 4.) Although the quantity was large (a little over thirty pounds), the single drug delivery to Mark Chavez on February 10, 2020 involved "no level of sophistication." (*Id.*) At no point did Bermudez ever carry a gun; he did not engage in any sophisticated or deceptive conduct; he did not exercise any leadership role over anyone else. Unlike the defendants involved in the retail-side of the distribution ring, Bermudez' offense conduct did not involve the "darknet"; did not involve repeated criminal activity over a long period of time; did not involve the possession of handguns; and did not even involve the misuse of the mails. Rather, Bermudez was a middle-man who brokered a single "wholesale" methamphetamine delivery. At the time of the transaction, Bermudez was in the grips of a long-term heroin and methamphetamine addition and was living out of his car and an RV. (CR 1 at 14-18; *see* PSR ¶¶ 67-72). Having long before lost his gainful employment as a result of his addiction, he engaged in the transaction primarily to feed his habit.

### B. The History and Characteristics of the Defendant

Bermudez' history and characteristics do not reflect that of a "hard-core" criminal who is unlikely to rehabilitate or is deserving of harsh punishment. Rather, they reflect an individual who has a history of gainful employment in construction; someone with strong family support from parents, siblings, four children, and others; and a former addict who is likely to benefit significantly from BOP resources while in federal prison.

Defendant without question has an addiction problem. He started abusing alcohol and marijuana as a young teenager, and has experimented with almost every type of drug. He became addicted to heroin while he was incarcerated in 2013, and used it "every day" from the time he was released until he was arrested in 2020. (*See* PSR ¶ 68). During that time he also became addicted to methamphetamine and online gambling. (*Id.* ¶¶ 61, 67).

Prior to his heroin and methamphetamine addictions, Bermudez had a long history of stable employment in the construction industry. Specifically, from 2003 to 2012, he worked in construction, both in masonry and as a Superintendent supervising construction job sites. (*Id.* ¶ 77). Bermudez intends to obtain his GED while incarcerated and to return to construction work, possibly obtaining his contractor's license, upon his release. (*Id.* ¶ 75).

As the letters attached hereto attest, Bermudez has strong family support. His brother Raphael describes him as someone with "a big heart" who "loves to help everyone he will give you his last dollar." (Ex. A at 5). His two aunts, Antonia Gomez and Margarita Gomez, describe Bermudez as "a respectful adult" and a "good father," who regularly helped both aunts with things they asked him to do. (*Id.* at 3-4). His parents, Rafael and Regina Bermudez, describe him as "a good son, always respected us, was never in gangs, was always an excellent son to us, very friendly, loved by all of my family and his mom's family." (*Id.* at 1). They currently have

custody of Bermudez' four children, ages 16, 15, 15, and 10, but report that they "are elderly now" and the "children need him as well as we do." (*Id.*; *see* PSR ¶ 53).

Bermudez does have a history of domestic violence. Without minimizing that conduct in any way, it is worth noting that all three of those convictions involved Adriana Diaz, the mother of Bermudez' four children. The last of those convictions occurred in 2013; since that time, Diaz was deported to Mexico. (PSR ¶ 53.) And although Bermudez was in another long-term relationship following Diaz' deportation (*see* PSR ¶ 37), he has never been accused of violence of any kind outside of his relationship with Diaz.

  C. <u>The Need to Protect the Public From Further Crimes of Defendant and to Afford Defendant With Needed Treatment and Training</u>

Bermudez intends to seek substance abuse treatment while in custody. (*Id.* ¶ 71). There is every reason to believe that a 120-month sentence is more than sufficient to afford Bermudez BOP treatment, education, and training, and to rehabilitate Bermudez so that he does not reoffend upon release. Bermudez has never before been in federal custody, nor has he served any lengthy sentence or engaged in a substance abuse treatment program. As the Sentencing Commission has found, the BOP rehabilitates better: across all age groups, federal prisoners had a substantially lower recidivism rate than comparable state prisoners. *See* United States Sentencing Commission, "*The Effects of Aging on Recidivism Among Federal Offenders*" at 27 (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited June 30, 2022) (hereinafter "Sentencing Commission Study"). Moreover, a 120-month sentence would keep Bermudez in jail well into his mid-40s. As the Sentencing Commission also has found, "[o]lder offenders were substantially less likely than younger offenders to recidivate following release." Sentencing Commission Study, *supra*, at 3.

### D. The Need to Avoid Unwarranted Sentencing Disparities

The need to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 2552(a)(6), also warrants a sentence of no more than the statutory minimum 120 months.

Bermudez' overall culpability is less than or comparable to Olayvar. On the one hand, Bermudez has domestic violence convictions whereas (it appears from publicly available records) Olayvar has only previous narcotics convictions. On the other hand, Olayvar's participation in the instant offense involved the same overall quantity of methamphetamine as Bermudez. *See United States v. Olayvar*, CR 20-135-AB, Government's Sentencing Position, CR 73 at 2 ("Defendant admits that he aided and abetted the possession of the [16.619 kilograms of actual] methamphetamine located in Chavez' bedroom."). And unlike Bermudez, Olayvar was involved in multiple separate acts of retail distribution through the mail and was arrested in a house at which two loaded handguns also were found. *See id.*; *see also* CR 1 at 10. Like Olayvar, Bermudez has fully accepted responsibility for his crime. The Court sentenced Olayvar to 100 months after finding him to be safety valve eligible. *U.S. v. Olayvar*, CR 20-135-AB, CR 79. A sentence of more than 120 months on Bermudez would represent an unwarranted disparity.

A comparison with the other of the related defendants who has been sentenced in this matter, Matthew Ick, is to the same effect. Ick, like Bermudez, was a drug user who was assisting Chavez in order to support his habit. *See United States v. Matthew Ick*, CR 20-135-AB, CR 90 at 7.) Because he did not have any violent criminal history, Ick was safety valve eligible and received a sentence of 60 months. (*Id.* CR 95). But unlike Bermudez, who brokered a single wholesale transaction, Ick assisted Chavez and others with the retail distribution of drugs over a lengthy period of time; Ick's conduct involved retrieving packages from a P.O. Box held in fictitious names;

and handguns were found at Ick's apartment. (*See Id.*, CR 89 at 4). A sentence here that is more than double what Ick received would also represent an unwarranted disparity.

## IV. CONCLUSION

For the foregoing reasons, Defendant Andres Matias Bermudez respectfully submits that the Court should impose a sentence that is no higher than the statutory mandatory minimum of 120 months.

Date: July 1, 2022

SIDLEY AUSTIN LLP

By:      */s/ Douglas A. Axel*
         Douglas A. Axel
         Attorney for Defendant
         ANDRES MATIAS BERMUDEZ

DEFENDANT ANDRES MATIAS BERMUDEZ' SENTENCING MEMORANDUM