1   Douglas A. Axel (SBN 173814)
    daxel@sidley.com
2   SIDLEY AUSTIN LLP
3   555 West Fifth Street
    Los Angeles, CA 90013
4   Telephone: +1 213 896 6000
5   Facsimile: +1 213 896 6600

6
    Attorney for Defendant
7   ANDRES MATIAS BERMUDEZ

8
9                  UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  UNITED STATES OF AMERICA,      Case No.  2:21-cr-00421-AB

13          Plaintiff,             **DEFENDANT ANDRES MATIAS
                                   BERMUDEZ' NOTICE OF MOTION AND
14        vs.                      MOTION TO CORRECT SENTENCE
                                   PURSUANT TO FED. R. CRIM. P. 35(a);
15  ANDRES MATIAS BERMUDEZ,        MEMORANDUM OF POINTS AND
                                   AUTHORITIES; EXHIBIT A**
16          Defendant.
                                   Sentencing Date: August 5, 2022
17
                                   Deadline to Correct Sentence: **August 19, 2022**
18
                                   Hearing Requested
19
                                   Assigned To: Hon. André Birotte, Jr.
20

21

22

23

24

25

26

27

28

4888-6438-9933

DEFENDANT SANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that, on a date and time as may be set by the Court,

3   in Courtroom 7B of the First Street United States Courthouse, located at 350 West

4   First Street, Los Angeles, CA 90012, Defendant Andres Matias Bermudez

5   ("Bermudez") will and hereby does move for an order to correct his sentence in this

6   matter pursuant to Federal Rule of Criminal Procedure 35(a).

7        This Motion is made based upon this Notice of Motion; the attached

8   Memorandum of Points and Authorities and Exhibit A; all pleadings, papers and

9   proceedings in this action and the related action *United States v. Olayvar et al.*, CR

10  20-135-AB; and such other matters as the Court deems proper.

11       Pursuant to Rule 35(a), any correction to defendant's sentence must be made on

12  or before **August 19, 2022**.  On August 8, 2022, counsel for defendant spoke with

13  AUSA Keith Ellison regarding this Motion and a potential briefing schedule.  AUSA

14  Ellison stated that, although he is currently in trial, he did not object to an expedited

15  briefing schedule as may be necessary to meet any required deadline.  To the extent

16  the Court would like to set a hearing on this Motion, counsel will coordinate regarding

17  a mutually acceptable hearing date.

18

19   Date:  August 8, 2022                          SIDLEY AUSTIN LLP

20                                                  By:_____/s/ Douglas A. Axel_____

21                                                      Douglas A. Axel
                                                        Attorney for Defendant
22                                                      ANDRES MATIAS BERMUDEZ

23

24

25

26

27

28

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

By this Motion, defendant seeks the extraordinary relief provided by Federal Rule of Criminal Procedure 35(a):  to correct the sentence the Court imposed on August 5, as it may have resulted "from arithmetical, technical, or other clear error." Fed.R.Crim.P. 35(a).  The error here derived from the original PSR, which improperly included as part of the defendant's criminal history a recent 2021 conviction for armed robbery and attempted carjacking.  Although the PSR was later amended, the Court at the hearing stated that it had been relying on the original PSR when preparing to sentence defendant, at one point identifying the erroneously-included criminal history as a reason to impose a stiff sentence in this case.  However, this 2021 violent offense *had nothing to do with this defendant*.  Rather, as the Probation Office later conceded, it was erroneously included in the original PSR because of a case of *mistaken identity*.

This error was pointed out during the sentencing hearing, and the Court seemed to acknowledge it.  However, reflecting on the sentence imposed and the discussion during the hearing, defense counsel is concerned that the original PSR error *may* have influenced the sentence imposed.  The picture of the defendant painted by the erroneous PSR and relied on by the Court when preparing for the hearing was so fundamentally different from the true picture of the defendant and his criminal history, it would have taken almost super-human judicial recalibration tools to properly account for the error "on the fly" during the hearing, without the practical ability (in the midst of a packed courtroom with many other matters waiting to be addressed) to carefully reconsider the positions of the parties without the harshly negative light cast by the misinformation contained in the erroneous PSR.

To the extent the Court, upon reflection, is confident that it was in no way influenced by the erroneous PSR when imposing the 190-month sentence, then no correction of the sentence is necessary or appropriate.  However, to the extent the

1

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

1  Court, upon reflection, believes that the erroneously-included 2021 armed robbery/

2  carjacking conviction did influence its sentence, it has both the power and the duty to

3  correct the sentence in accordance with Federal Rule of Criminal Procedure 35(a).

4  Defendant asks only this:  that the Court carefully reconsider the parties' sentencing

5  positions in light of the corrected PSR, purged of the negative light cast by the

6  erroneously-included 2021 conviction, and render an appropriate judgment.

7        Under the Rule, any correction to the sentence must be made **no later than**

8  **August 19**.  Defendant respectfully requests a hearing on this Motion.

9  **II.    LEGAL STANDARD**

10       Federal Rule of Criminal Procedure 35(a) provides:  "Within 14 days after

11  sentencing, the court may correct a sentence that resulted from arithmetical, technical,

12  or other clear error."  This provision, formerly found at Rule 35(c), codifies the

13  court's "inherent authority to correct sentencing errors," so long as the correction is

14  made "shortly after the sentence is imposed."  *United States v. Morillo*, 8 F.3d 864,

15  868 (1st Cir. 1994) (citing Fed.R.Crim.P. 35(c) Advisory Committee's Note (1991

16  amendment); *United States v. Corey*, 999 F.2d 493, 296 (10th Cir. 1993)) (internal

17  alterations omitted).  Although the Rule was not intended to allow a court to

18  "reconsider the application or interpretation of the sentencing guidelines or for the

19  court simply to change its mind about the appropriateness of the sentence," Rule 35(c)

20  Advisory Committee's Note (1991 Amendments), it does afford the Court absolute

21  discretion to correct a sentence that, in the language of the Rule, "resulted from

22  arithmetical, technical, or other clear error."  As amended in 2009, the Rule allows for

23  the correction of such errors within "14 days, including intermediate Saturdays,

24  Sundays, and legal holidays."  Rule 35, Advisory Committee Note (2009).  As applied

25  here, such a correction must be made on or before **Friday, August 19, 2022**.

26       / / /

27       / / /

28

1    **III.   ANALYSIS**

2         **A.   The Error**

3         The original Presentence Report, filed April 29, 2022, erroneously included as

4    part of defendant's criminal history a serious violent felony allegedly committed on

5    June 23, 2021, namely an attempted carjacking and second degree robbery with

6    enhancements for the personal use of a firearm.  (CR 31 at 13 ¶ 38).  This recent,

7    violent criminal history strongly influenced the recommendation of the Probation

8    Office that defendant be sentenced to a term of 200 months.  (CR 40).   In its

9    recommendation letter, the Probation Office emphasized:

10   "*Of particular concern* is that while awaiting sentencing in this action, Bermudez was

11   convicted of second-degree robbery, attempted carjacking, and attempted second

12   degree robbery in Orange County, California and was sentenced to a three-year prison

13   term."  (CR 40 at 4).

14        The Probation Office's concern with the 2021 armed robbery/ carjacking

15   conviction was entirely understandable, for it paints the picture of a dangerous

16   individual who, while awaiting sentencing in this action, committed a violent crime

17   that traumatized two victims and easily could have led to serious injury or death.  In

18   fact, however, the 2021 carjacking *had nothing to do with this defendant*.  Rather, as

19   the Probation Office later conceded, the individual convicted of that offense was an

20   entirely different and unrelated person of the same name, and the inclusion of that

21   conviction in the defendant's PSR was a simple case of mistaken identity.  (CR 47 at

22   2).  On May 26, 2022, the Probation Office issued a revised PSR (CR 46) and a

23   revised recommendation letter (CR 45), both of which removed express reference to

24   that conviction.  *Inexplicably, however*, the Probation Office's revised

25   recommendation letter continued to recommend a 200 month sentence, despite the fact

26   that the individual for whom that recommendation was originally made is a

27   fundamentally different person from *this* defendant, who has *never* committed any

28

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

1    such crime; whose last conviction prior to this offense was *in 2013*; and who has not

2    shown himself to be a present danger to anyone.

3         During the sentencing hearing in this matter, held on August 5, the Court stated

4    that it had been relying on the original, uncorrected PSR, *specifically identifying the*

5    *2021 violent conviction as a reason to impose a stiff sentence*.  Defense counsel

6    pointed out that there was a corrected PSR that did not include the 2021 conviction,

7    and the Court appeared to acknowledge it.  Nevertheless, the 190-month sentence

8    imposed a few minutes later closely mirrors the Probation Office's original 200 month

9    recommendation, which had never been updated or corrected to account for the

10   removal from defendant's criminal history of the erroneously-included conviction.

11        **B.      Whether the Sentence "Resulted From" the Error**

12        Only the Court knows whether the 190 month sentence it imposed "resulted

13   from" the erroneous inclusion of the 2021 armed robbery/carjacking conviction in

14   defendant's criminal history, or the Court's consideration of that conviction when

15   preparing for Bermudez' sentencing.  Defense counsel has the utmost respect for the

16   integrity of this Court, and defers entirely to the Court's judgment and discretion in

17   this matter.  To assist the Court in making its determination, defense counsel identifies

18   the following factors suggesting that the 2021 armed robbery/carjacking conviction

19   erroneously included in the original PSR may have influenced the Court's sentence:

20        • As the Court stated at the hearing, the Court relied on the original PSR when

21          preparing for the hearing.  The picture of the defendant painted by that

22          erroneous PSR – a violent criminal who presents a current danger to society

23          – would naturally influence any judge's sentencing decision in deep and

24          profound ways.

25        • The erroneous picture painted by that conviction was so inconsistent with

26          the Defendant's Sentencing Memorandum (CR 51) – which was based on

27          the corrected PSR and did not mention the 2021 conviction – it would have

28

4

1    naturally caused any judge unaware of the error to discount that

2    Memorandum in its entirety.

3    • The 190-month sentence appears to defense counsel to be inconsistent with

4    this Court's approach to sentencing in other cases, including the sentencings

5    of the related defendants in this case.

6    • For example, in the related action *United States v. Thomas Olayvar*, CR 20-

7    135-AB, this Court imposed a sentence of 100 months even though the

8    Guidelines, the government, and the Probation Office all recommended 210

9    months. *See U.S. v. Olayvar*, Sentencing Hearing Transcript, CR 83 at 5-6,

10   20 (June 23, 2021) (attached hereto as **Exhibit A**).  Olayvar (a) had previous

11   federal narcotics convictions involving "narcotics that had some weight," *id.*

12   at 7; (b) pled guilty to the *same amount* of methamphetamine as Bermudez

13   in this case, *see U.S. v. Olayvar*, Plea Agrement, CR 51 at 6; (c) was a

14   Guidelines "career offender" with a Criminal History Category VI, *id.* at 23;

15   and (d) was extensively involved with the methamphetamine distribution

16   conspiracy, including by delivering "package after package after package

17   after package," *Olayvar* Sentencing Tr. at 7, and residing in the apartment at

18   which two handguns were found.  *See U.S. v. Bermudez*, Criminal

19   Complaint (CR 1) at 9-10 (two loaded handguns were found at the residence

20   where Olayvar was present).  Nevertheless, the Court found that a 210-

21   month sentence was not "the answer for this." *Id.* at 20.  Instead,

22   recognizing that Olayvar was like "the dope fiend that continues to sell

23   drugs to support his habit, he gets involved in higher levels because of the

24   amount that is being trafficked," the Court found that a 210-month sentence

25   was more than what was necessary to "accomplish the goals of

26   accountability, rehabilitation, and punishment," *id.* at 23, and instead

27   sentenced him to 100 months.

28

5

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

- It is worth noting that neither the Government nor the Probation Office saw reason to significantly distinguish between Olayvar and Bermudez: both recommended 210 months for Olayvar; for Bermudez, the Probation Office recommended 200 months and the Government recommended 219.

- In the words of this Court, what penological "goals of accountability, rehabilitation, and punishment" would justify sentencing Bermudez here to 190 months, nearly *double* the 100-month sentence this Court imposed on Olayvar?

  o It cannot be the amount of methamphetamine involved, for Olayvar was sentenced based on the same 16.619 kilograms of methamphetamine found in Mark Chavez' bedroom as was Bermudez. (*Compare U.S. v. Olayvar*, Plea Agrement, CR 51 at 6 (referring to 16.619 kilograms found in Chavez' bedroom) *with U.S. v. Bermudez*, Plea Agreement, CR 37 at 6 (referring to the same 16.619 kilograms found in Chavez' bedroom).

  o It cannot be the extent of the defendants' participation in the conspiracy, for Olayvar's participation was repeated over a long period of time, whereas Bermudez brokered only a single wholesale delivery. *See U.S. v. Olayvar*, Transcript of Sentencing Hearing, CR 83 at 7 (Court emphasizing the repeat nature of Olayvar's conduct as an aggravating factor as compared with a defendant engaged in a single delivery).

  o It cannot be the defendants' "career offender" status or the overall extent of criminal history, for Olayvar too was a career offender under the Guidelines and had the same Criminal History Category VI as Bermudez. *U.S. v. Olayvar*, CR 20-135-AB, Government's Sentencing Position, CR 73 at 1 (June 16, 2021).

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

- It cannot be the fact of narcotics addiction as a root cause of the offense, for it is undisputed that Bermudez, like Olayvar, was addicted to drugs and engaged in the transaction for no reason other than to support his addiction. *See* Bermudez PSR ¶¶ 63-72.
- It cannot be the prospect that the defendant will respond to rehabilitative treatment, for Bermudez – who was gainfully employed in construction before becoming addicted – has never before served a federal sentence, nor has he previously served any lengthy sentence or engaged in a substance abuse treatment program.
- It cannot be the defendant's level of family support, for as the Court saw at the hearing, Bermudez has loving and law-abiding parents, siblings, and teenage children who are desperate to support Bermudez upon his release. *See* Bermudez PSR ¶¶ 45-56.

- Although the Guidelines view the criminal histories of Olayvar and Bermudez comparably (both are career offenders with Criminal History Category VI), the nature of those histories are different. Olayvar's criminal history appears to have consisted of federal felony narcotics offenses, whereas Bermudez's consisted of a misdemeanor domestic violence conviction in 2006 and two felony domestic violence convictions in 2010 and 2013, respectively. (PSR ¶¶ 33, 35, 36). Is this the difference that accounts for the dramatically different sentences (190 months v. 100 months)?
  - It is hard to imagine this to be the case, particularly since those offenses were so long ago, and all were in the context of a single relationship that has long since ended. In all of Bermudez' life both before and after those offenses, he has never been arrested for or

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

1   charged with any other violent crime, despite having been in at least

2   one other long-term domestic relationship.

3   o   Even if one views Bermudez' history as requiring greater

4   accountability or deterrence than Olayvar's 100-month sentence, a

5   120-month sentence for Bermudez – which would keep him

6   incarcerated until he is well into his late 40s, with his five-year period

7   of supervised release extending well into his 50s – reasonably

8   accomplishes the goal.

9   Had Bermudez in fact committed a violent armed robbery/carjacking offense in

10   2021, while awaiting sentencing in this case, he undoubtedly would have deserved a

11   190-month sentence.  But *this Bermudez* never committed any such crime.  And when

12   that crime is purged from the record, there does not appear to be any penological

13   reason to sentence *this Bermudez* to 190 months.

14   By raising the foregoing points, defense counsel does not intend to re-argue the

15   sentencing hearing.  Rather, defense counsel seeks to aid the Court in assessing

16   whether the PSR's case of mistaken identity may have influenced the 190-month

17   sentence imposed on August 5.  To the extent the Court was influenced – even

18   subconsciously – by this profound error in the PSR, defendant respectfully requests

19   that the Court correct the sentence pursuant to Rule 35(a).

20   / / /

21   / / /

22   / / /

23

24

25

26

27

28

8

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE

## IV.   CONCLUSION

For the foregoing reasons, defendant Andres Matias Bermudez respectfully requests that the Court carefully consider the parties' sentencing positions in light of the corrected PSR, purged of the harshly negative light cast by the erroneously-included 2021 conviction.  To the extent the Court, upon reflection, believes that the erroneously-included 2021 armed robbery/carjacking conviction influenced the sentence imposed, defendant respectfully requests that the Court promptly correct the sentence pursuant to Federal Rule of Criminal Procedure 35(a) and impose a sentence of 120-months' imprisonment.

Date:  August 8, 2022

SIDLEY AUSTIN LLP

By:     /s/ Douglas A. Axel
        Douglas A. Axel
        Attorney for Defendant
        ANDRES MATIAS BERMUDEZ

DEFENDANT ANDRES MATIAS BERMUDEZ' MOTION TO CORRECT SENTENCE