# Exhibit A

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5    UNITED STATES OF AMERICA,        )
                                      )
6                    PLAINTIFF,       )
                                      )
7            vs.                      ) No. CR 20-0135-AB
                                      )
8    THOMAS OLAYVAR,                  )
                                      )
9                    DEFENDANT.       )
     _____)

10

11

12

13               REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                  WEDNESDAY, JUNE 23, 2021

15                       11:32 A.M.

16                  LOS ANGELES, CALIFORNIA

17

18

19

20

21

22   _____

23        **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
          FEDERAL OFFICIAL COURT REPORTER
24        350 WEST FIRST STREET, ROOM 4311
          LOS ANGELES, CALIFORNIA 90012
25            cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3        OFFICE OF THE UNITED STATES ATTORNEY
          BY: KEITH D. ELLISON
 4        ASSISTANT U.S. ATTORNEY
          312 NORTH SPRING STREET
 5        13TH FLOOR
          LOS ANGELES, CALIFORNIA 90012
 6        (213) 894-2434

 7
     FOR THE DEFENDANT:
 8
          BERNARD J. ROSEN, ATTORNEY AT LAW
 9        424 SOUTH BEVERLY DRIVE
          BEVERLY HILLS, CALIFORNIA 90212
10        310-203-9600

11
     ALSO PRESENT:
12
          SPECIAL AGENT CHRISTOPHER HICKS FROM HSI
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JUNE 23, 2021

 2                             11:32 A.M.

 3                              - - -

 4              THE CLERK:  Calling CR 20-135, United States of

 5   America versus Thomas Olayvar.

 6              Counsel, please make your appearances, beginning

 7   with the government.

 8              MR. ELLISON:  Good morning, Your Honor.

 9   Keith Ellison for the United States.  Joining me at counsel

10   table is Special Agent Christopher Hicks from HSI.

11              MR. ROSEN:  Good morning, Your Honor.  Bernard

12   Rosen with Thomas Olayvar who is present in custody.

13              THE COURT:  Good morning.

14              We are here today for sentencing in this case.  I

15   have had a chance to review the numerous documents that were

16   filed in this case, just want to run through them for the

17   record.

18              I have reviewed the defendant's position paper,

19   the government's position paper, the addendum to the PSR,

20   second revised PSR, the second addendum to the PSR, the

21   original PSR, as well as the letter that was filed by

22   Mr. Olayvar in this case.

23              Is there anything else submitted that I may have

24   missed from the government, Mr. Ellison?

25              MR. ELLISON:  No, Your Honor.
```

```
 1              THE COURT:  Mr. Rosen?

 2              MR. ROSEN:  No, Your Honor.

 3              THE COURT:  Okay.  So let me start with defense

 4      counsel.

 5              Mr. Rosen, have you had enough time to read and go

 6      over the presentence report with your client?

 7              MR. ROSEN:  I have, Your Honor, yes.

 8              THE COURT:  Do you have any concerns about

 9      Mr. Olayvar's ability to understand the report?

10              MR. ROSEN:  None at all.

11              THE COURT:  So, Mr. Olayvar, let me ask you, did

12      you get the presentence report and go over it with your

13      lawyer?

14              THE DEFENDANT:  Yes, I did.

15              THE COURT:  Mr. Rosen, why don't you just bring

16      the microphone closer this way so he doesn't have to get up.

17              Do you need any more time to read it, Mr. Olayvar?

18              THE DEFENDANT:  No, Your Honor.

19              THE COURT:  Did your attorney go over it all with

20      you?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  Do you believe you understood the

23      report, sir?

24              THE DEFENDANT:  Yes, I did, sir.

25              THE COURT:  So, Mr. Rosen, do you want to contest
```

```
 1   or change anything in the presentence report other than what

 2   has been submitted in writing?

 3           MR. ROSEN:  No, Your Honor.

 4           THE COURT:  So at this time why don't you step to

 5   the lectern.  The floor is yours.  I would like to get your

 6   views.  There are a lot of moving parts, I would submit

 7   here, and I want to get your perspective on things.

 8           MR. ROSEN:  Thank you, Your Honor.  May I lower my

 9   mask?

10           THE COURT:  Yeah.  I am just trying to be safe for

11   everyone else.

12           MR. ROSEN:  I understand.

13           Mr. Olayvar has admitted his involvement in a

14   rather serious drug trafficking operation.  All of the

15   parties agreed, however, that his role was just a minor one.

16           I think all of the parties agree as well that his

17   involvement was intimately involved and probably caused by

18   his own personal drug addiction, something that, even though

19   he is a 43-year-old adult, he has never taken responsibility

20   apparently to try to do anything about.

21           But nevertheless, his involvement here as a result

22   of this addiction, his criminal history, which is serious,

23   also appears to be entwined with his drug addiction.

24           The sentencing guidelines, the book says 17 1/2

25   years.  The government adopts the book's position, as has
```

 1    the probation officer.  Of course, our Supreme Court has

 2    said no, no, no, you start with those calculations; but then

 3    you have to look at the individual before the Court, the

 4    facts presented about that individual, and then a reasonable

 5    sentence needs to be determined and imposed.

 6            17 1/2 years.  Is that reasonable?  That's what

 7    the book says.  I have offered, obviously, several

 8    differences of opinion.

 9            THE COURT:  Mr. Rosen, if I could, let me ask you

10    directly.  Do you contest the calculation of the guideline?

11            MR. ROSEN:  No.

12            THE COURT:  Do you contest whether he is a career

13    offender, under the guidelines?

14            MR. ROSEN:  Under the guidelines, no, although I

15    do question why the minor role reduction suddenly gets

16    eliminated under the career criminal definition but not

17    under other definitions, but that's just a policy argument.

18    I do not disagree with the calculations or those findings.

19            THE COURT:  I am going to give you plenty of time

20    to argue.  I just want to make sure I understand.  Your

21    position bottom line, in essence, you just varied from the

22    guidelines under 3553(a) to impose a 16-month sentence?

23            MR. ROSEN:  Yes.

24            THE COURT:  If I could, I want to ask you -- and I

25    am going to ask you admittedly what might be an unfair maybe

```
 1    challenging question, but I am going to ask nevertheless
 2    because I know your oral advocacy skills, and I am sure you
 3    will guide me to the right answer.
 4           But I am curious how Mr. Olayvar -- and maybe this
 5    question should be addressed also for the government; so I
 6    will just throw it out there.
 7           I had a case last week, U.S. versus Mr. Tan, and
 8    drug conspiracy, money laundering.  Mr. Tan was accused of
 9    basically proceeds being shipped from Los Angeles to
10    Chicago, he gets them, delivers them to a location, he gets
11    indicted.  He does not get minor role.  Okay.
12           We have Mr. Olayvar here who delivered package
13    after package after package after package.  And Mr. Tan had
14    no prior record.  Mr. Olayvar delivered package after
15    package after package.
16           He may not have known the amount, but it's not his
17    first time at the rodeo.  And in fact these other times in
18    prison where he's had federal cases involve narcotics that
19    had some weight.  In other words, he is involved with
20    players that move, to use the colloquial term, move weight.
21           How does he get -- how does Mr. Olayvar get minor
22    role when he is delivering package on a regular basis
23    knowing the contents contained therein?  Is that challenging
24    enough of a question for you?
25           MR. ROSEN:  Because, in my opinion, what
```

```
 1   Mr. Olayvar was doing -- I don't know about that other case.
 2   I know -- I have other cases similar to that, and some of my
 3   clients' involvement, yes, is quite involved.  I will just
 4   give that as a general response.
 5          In my opinion, based in part, in part on my
 6   experience with other cases in which clients I represent are
 7   charged with delivering packages only, I still stand here
 8   very comfortably looking the Court in the eye from this
 9   distance and saying, yes, I do think Mr. Olayvar's role in
10   this trafficking operation was in fact minor.  Most of
11   what -- again, the number of times he dropped off a package
12   at the post office, I do not know.
13          I believe, however, that, on most of the
14   occasions, it was only one or two packages.  Yes, the day
15   before he was arrested I think it was -- he has a photograph
16   showing him carrying a plastic postal box full of those
17   packages.  So certainly the day before.
18          But nevertheless, look at this -- I don't want to
19   mention names, but we all know who ran this operation --
20          THE COURT:  So your point is, in comparison with
21   others involved, he had a minor role in this -- in this drug
22   trafficking conspiracy organization?
23          MR. ROSEN:  In the one that he is charged with and
24   admitted his involvement, yes, and apparently -- I commend
25   government counsel for agreeing with that.  And, again, I
```

```
1    assume in part -- I don't want to speak for the government,

2    obviously, but I assume that at least in part that's with

3    similar experiences to mine looking at other cases where the

4    defendants have been involved in this and somehow seeing

5    Mr. Olayvar's role, again, being minor in comparison.  So I

6    am comfortable in making that argument.

7         I am more concerned, however, with the role that

8    his addiction has played.  The guidelines, the book says

9    ordinarily that shouldn't matter.  As far as I'm concerned,

10   that's 180 degrees off course.  That is the first thing and

11   maybe the last thing that ought to matter.

12        My client is 43 years of age.  He hasn't been

13   married, but he could be a husband.  He has no children, but

14   he could be a father.  At 43 years of age, as a husband and

15   as a father, he ought to be adult and mature enough to be

16   guiding the future of young children.

17        He has not been involved in that activity.  Maybe

18   that is a sign of maturity.  But the point I am trying to

19   get at, he has failed miserably in mature efforts to gain

20   rehabilitation from his drug program.  Maybe there have been

21   occasions when he has felt, oh, I can handle this, I can

22   handle this, but he hasn't.

23        The first couple of cases he had were handled at

24   the county jail level.  It doesn't appear -- and as far as I

25   am aware in all my experiences -- that the county jail has
```

1  never offered a drug rehabilitation program.  If he was

2  placed on formal probation -- and I don't think he was on

3  any of those state convictions -- it doesn't appear that he

4  was offered or advised to involve himself in that.

5       I'm not asking that he not get time.  He needs

6  time.  He needs time to enroll in and complete the Bureau of

7  Prisons RDAP program.

8       THE COURT:  Mr. Rosen, if you don't mind, I can't

9  remember, and maybe you have the answer.  How long is the

10  RDAP program?  Do you know?

11       MR. ROSEN:  I am afraid -- I apologize.  I do not

12  know.  Again, my recollection is I think, if you complete

13  it, the Bureau gives you, I have heard, estimates of six

14  months to a year of credit against the time.

15       But as I have told Mr. Olayvar, and I reminded him

16  again this morning when I talked to him before we came to

17  court, he needs time in custody to get into that program and

18  to complete it.

19       When he has been incarcerated, his conduct has

20  been almost perfect.  At the county jail level, he

21  volunteered for and was accepted into the campfire program.

22  Did he go out and fight fires, save people's lives?  I do

23  not know, but he volunteered for it.

24       I assume there is some danger in it if he were out

25  there fighting wildfires, and I assume he completed that

```
 1   program.  He got some credit for that from the county jail
 2   system but not in the book.  Book doesn't say, oh, if you
 3   have been incarcerated and you have done well, we'll give
 4   you a point off.
 5          While he was at MDC, I have never seen -- I get
 6   people sending me their evaluations or asking me to retain
 7   them.  I have never seen the series of outstanding
 8   evaluations he received.
 9          Why was he transferred out from MDC to the
10   San Luis Regional Center?  I do not know.  Was it because he
11   did something wrong?  I don't think so, but I can't deny
12   that that's a possibility.
13          My understanding is it was around the time when
14   COVID problems were starting to increase, and maybe they
15   just felt they needed bed space.  The point is outstanding
16   work while incarcerated.  And the book doesn't give any
17   credit for that either.
18          Yes, he needs time in custody, to get into the
19   program.  As has been indicated I think in both his letter
20   and the presentence report if and when he is released on
21   supervised release, he is hoping to rejoin his family.
22          His mother is present in the courtroom.  She asked
23   if she could come today, and I told her the date and time
24   just to show there is some family support when he gets
25   released.
```

He is hoping to get into some sort of automotive repair business.  There is a program under Unicore at FCI Victorville that I located, and I am going to ask the Court to make a recommendation for placement there.

If he -- and, again, when he has done something wrong, it's been -- if it's involving drugs, drug sales, doesn't get into violence, no crimes of violence that he's a danger to anybody physically other than providing them drugs.

If he fails after the RDAP program and after being out on supervised release and does -- and is not rehabilitated or if the program did not help him control his own addiction and he violates, he is facing a maximum sentence of life imprisonment.  And if that doesn't alert him to the dangers of his addiction, I can't figure out what does.

I'm starting to repeat myself, as I say.  I think a reasonable sentence, given the facts, circumstances, of his conduct and how it has been so involved with his own addiction -- and, yes, he has failed to act responsibly on his own.  That's why the custodial time is needed.  That's why the RDAP program is needed.  I think a term of 60 months which is five times I think of what he's ever served before, which was the year after the county fire program -- he will not be serving his time in a county fire program, at least I

```
 1   don't think the Bureau has any.  I think he will be in an
 2   imprisonment situation.  It's just a question of at what
 3   level.  I think that is a reasonable sentence to impose and
 4   reasonable conditions to impose.
 5          Thank you.
 6          THE COURT:  Thank you, Mr. Rosen.  Appreciate it.
 7          Mr. Olayvar, do you wish to say anything before I
 8   sentence you, sir?
 9          THE DEFENDANT:  I just wrote that letter, and
10   everything is in the letter.
11          THE COURT:  I did read the letter.  It was helpful
12   for me to understand your perspective.
13          Mr. Rosen, you said Mr. Olayvar's mother is here
14   as well?
15          MR. ROSEN:  She is in the courtroom, yes.
16          THE COURT:  I see her.
17          I appreciate you coming.
18          If my memory serves me correctly, your mom is a
19   nurse -- right? -- Mr. Olayvar?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  Certainly thank you for your service
22   particularly during this time.
23          Mr. Olayvar, I will tell you a couple things that
24   struck me as I was reading this.  Look, you clearly have an
25   addiction issue, no ifs, ands, or buts about it.  But there
```

```
 1   is no doubt in my mind that there are things that you can do
 2   to be better.
 3          They're not putting people in the fire program
 4   that can't handle their business, so to speak.  You are
 5   still young.  You have a long life ahead of you, but you
 6   have got to wrestle with this demon.  I can't sit here and
 7   tell you how to do it.  I can only tell you my hope is that
 8   you will take whatever opportunity you have while in custody
 9   to help you deal with it.
10          When I was a public defender I used to tell
11   clients, don't just serve your time.  Have your time serve
12   you.  Easy for me to say, but my point is use the time while
13   in custody to try to do something to make yourself better so
14   you will be ready when you get out.
15          You have a mom sitting here, probably one of the
16   most painful times of her life.  Her husband -- he is the
17   one that's going to be able to provide an opportunity for
18   you to work?
19          THE DEFENDANT:  Yeah.
20          THE COURT:  They are laying the pathway for
21   success for you.  It's up to you how you want to handle it.
22   My hope is that you will remember what I'm saying.  I will
23   talk to you more after the sentence, but I want to remind
24   you this is a marathon, and it's hard.  Addiction is no
25   joke.  I deal with it all the time.
```

```
 1              You may stumble.  You are running through this
 2   marathon.  It's going to feel like you are climbing uphill,
 3   it's raining, and there is mud.  But like my mom used to
 4   always tell me, when you are going through hell, you have
 5   got to keep going.
 6              And for you the challenge is going to be to keep
 7   your head up and keep going.  And remember it's about
 8   progress, not perfection.
 9              Too many times we think, oh, I have got to be
10   perfect, and if I don't, that's what causes you to slip.
11   When we have challenges in our life, it causes us to get
12   down, but you have to get back up and utilize the resources
13   that are available.
14              Hopefully, during RDAP you will learn how to deal
15   with the challenges that is known as life so that you don't
16   make dumb decisions -- and I don't mean to be harsh, but I
17   am just speaking to you man to man -- make dumb decisions
18   like this that put you in a world of hurt.
19              So thank you for the letter, and I appreciate
20   receiving that.
21              Let's hear from the government.
22              Mr. Ellison, do you want to contest or change
23   anything in the presentence report other than what has been
24   submitted in writing?
25              MR. ELLISON:  No, Your Honor.
```

```
 1              THE COURT:  All right.  Let's hear from the
 2    government, but I will tell you just candidly.  Here are
 3    some of the issues I hope you will address.  I will ask the
 4    same thing I asked Mr. Rosen.  You don't contest the
 5    guideline calculation; correct?
 6              MR. ELLISON:  Correct.
 7              THE COURT:  Is Mr. Olayvar safety valve eligible?
 8    Not whether you agree that he should but whether under the
 9    law has he met all the requirements under safety valve?
10              MR. ELLISON:  Your Honor, the government objects
11    to the decision, the recent decision of the Ninth Circuit in
12    Lopez.
13              THE COURT:  I get you object.
14              MR. ELLISON:  As far as I can see, Mr. Olayvar is
15    safety valve eligible under --
16              THE COURT:  You have satisfied the appellate
17    division of your office by lodging your objection, but you
18    acknowledge that, under the law, he is safety valve
19    eligible.
20              MR. ELLISON:  Yes, Your Honor.
21              THE COURT:  Okay.  So with that, go ahead.
22              MR. ELLISON:  Your Honor, I want to start out by
23    talking about the dark web.  The dark web is designed to
24    facilitate anonymity.  It is exploited by criminals.
25              The reason I bring this up is it facilitates
```

```
 1   anonymity in transactions for both buyers and sellers.
 2           In this case, defendant was a member of a dark web
 3   drug vendor organization.  Defendant himself worked on the
 4   supply side.  Defendant was the assistant of an individual
 5   that I'm going to refer to as his roommate.  This individual
 6   is addressed by name in the PSR and in the --
 7           THE COURT:  Dare I ask where is he?
 8           MR. ELLISON:  This individual is also before the
 9   Court in a related case.
10           THE COURT:  Not the co-defendant, Matthew Ick;
11   right?
12           MR. ELLISON:  No.  The third individual is in a
13   related case.  I believe it is 20-130.
14           THE COURT:  Okay.  This COVID is messing with my
15   memory because I don't remember that case at all, but go
16   ahead.
17           MR. ELLISON:  All three of them were originally
18   charged in the same Complaint.  Ultimately they were charged
19   in separate --
20           THE COURT:  Got it.  I'm sorry.  I am sorry for
21   interrupting you.
22           So in your earlier statement you said that you
23   don't disagree with the calculation of the guidelines.  So
24   that means you agree that Mr. Olayvar should get a minor
25   role adjustment.
```

```
 1              MR. ELLISON:  Yes, Your Honor.  And that brings me
 2    back to my point why I started talking about the dark web
 3    first.
 4              Defendant took -- worked on the supply side.  He
 5    worked for his roommate.  He was the assistant of his
 6    roommate.  Defendant -- and I think this is really well
 7    stated by probation in paragraph 45 of the revised PSR in
 8    that defendant wasn't responsible for the dark web drug
 9    sales.  He had no decision-making authority in this
10    organization, and he was -- he only earned what he made from
11    what his roommate paid him.  He wasn't profiting directly
12    based off what was sold on the dark web.
13              For these reasons, given the scope and the
14    operating manner of this organization, we believe that minor
15    role is appropriate.  That said, we don't believe minimal
16    participant is appropriate.  Defendant was a knowing member
17    of this organization.  He mailed packages containing --
18              THE COURT:  There is no dispute.  He knew what was
19    going on.  I guess the question I have is how much weight,
20    if any, should the Court give to -- let me rephrase it.  Do
21    you agree or disagree with the notion that the addiction was
22    a catalyst factor in Mr. Olayvar's involvement in this case?
23              MR. ELLISON:  Absolutely.  And, Your Honor, I
24    think there is a common theme that was brought up by
25    Mr. Rosen when he was addressing the Court because, once
```

1  defendant was caught in this case, his behavior was

2  commendable.

3       As stated in the government's sentencing position,

4  defendant timely accepted responsibility at the outset of

5  this global pandemic in a manner that was helpful to both

6  the government and to ease the burden on the court system.

7  And for those reasons the government is recommending a

8  two-level variance.

9       It sounds like his addiction has contributed to

10  his past criminal history.  And for that it seems like

11  defendant goes through this pattern of he gets caught, he

12  gets clean, he goes to jail, and for that the government has

13  said that a sentence at the low end of the resulting

14  guidelines is appropriate because that is a mitigating

15  factor.

16       But I think one look at his criminal history also

17  reveals that defendant has had opportunities to reform his

18  behavior.  And whether or not these state jail or prison

19  facilities offered the treatment defendant may want and

20  seeks now, defendant was aware of the consequences of his --

21       THE COURT:  No question.  But I think you know,

22  Mr. Ellison -- you have been around long enough now, at

23  least -- we get these addicts that come in here every single

24  day.  It's not an excuse, but addicts use, and they use

25  and/or sell to use and/or sell.

```
 1          And the question I have, I guess, ultimately, is
 2   17 1/2 years is that sort of the answer for this?
 3          MR. ELLISON:  Your Honor, I think this brings me
 4   back to our written sentencing position and specifically the
 5   Court's direction to minimize sentencing disparities among
 6   similarly situated defendants.
 7          And, yes, much of defendant's post-arrest conduct
 8   is commendable.  There are mitigating circumstances in this
 9   case such as defendant's addiction and the role that
10   addiction played in leading defendant here.
11          But, again, the government believes these
12   mitigating factors only take him to the low end of the
13   resulting guideline range, and this is why we are
14   recommending a sentence of 210 months; whereas defendant is
15   in effect asking for a 16-level downward departure.  A
16   similarly situated defendant would not expect to receive a
17   16-level downward departure because he had addiction
18   problems.  Again, all of these things --
19          THE COURT:  I'm not sure I follow you.  You are
20   saying a similarly situated defendant would not expect to
21   get a variance?
22          MR. ELLISON:  A 16-level variance based off of the
23   mitigating factors present in this case.
24          THE COURT:  Why wouldn't they?
25          MR. ELLISON:  Your Honor, again, the government
```

```
1    believes that a two-level variance is appropriate to

2    recognize his commendable behavior post-arrest.  And then,

3    as far as the addiction and other mitigating circumstances

4    addressed in the government's written position, we believe

5    these put him at the low end of the resulting guidelines

6    after that variance.

7            What defendant is in effect asking for is a

8    16-level variance or an additional 14 levels upon -- on top

9    of what the government is recommending.

10           A similarly situated defendant who is just putting

11   forth the mitigating circumstances present here would not

12   expect to receive such a variance in this case and in a

13   related case.

14           THE COURT:  I got to push back a little bit or

15   just probe -- let me put it that way.

16           You are saying they wouldn't expect.  Again, I am

17   having trouble following it, like, because they think that

18   they wouldn't get it?  I mean, look.  Mr. Rosen, he is

19   expecting it.  Isn't it more a function of defense counsel

20   who is making the request?  That is what I am having trouble

21   with the notion that they wouldn't expect.

22           MR. ELLISON:  Of course.  And let me rephrase

23   this, Your Honor, because what the case law is very clear on

24   is that a careful review and consideration of the applicable

25   guidelines range helps the Court in reducing sentencing
```

1  disparities among similarly situated defendants.

2           And I think, when we look at the resulting

3  applicable guidelines range here, we see that a sentence in

4  or near the guidelines range is appropriate.

5           Defense counsel argues that the mitigating

6  circumstances unique to defendant warrant a sentence below

7  those guidelines.

8           The government's position is those mitigating

9  factors warrant a sentence at the low end of the guideline,

10 and a similarly situated defendant would similarly expect as

11 much; whereas the defendant instead is asking for a 16-level

12 downward variance.

13          THE COURT:  Go ahead.  Continue.

14          MR. ELLISON:  Unless the Court has any other

15 questions, the government would just note that selling these

16 drugs to anonymous customers is concerning.

17          THE COURT:  Again, don't get me wrong.  This is

18 all concerning.

19          Mr. Olayvar, doesn't get a pass -- again, I think

20 I probed with Mr. Rosen.  Wrong or right, Mr. Olayvar gets

21 involved with folks that move weight.  Pardon my

22 colloquialism, but every case he's had, these folks are

23 moving a lot of product.

24          It's not -- and Mr. Olayvar, no disrespect to you.

25 I don't believe for a second he thought, oh, this package

```
 1   maybe only has an ounce of X or -- he's moving the product,

 2   and he knows it.  He may not have known the full amount, but

 3   he knows it.  And doing it via the dark web is serious.

 4          The challenge I have, just in the interest of full

 5   candor is, is it worth 17 1/2 years for basically a dope

 6   fiend?  I'm not sure about that.  That's what I struggle

 7   with.

 8          He is the classic hypothetical that you probably

 9   received when you applied at the United States Attorney's

10   office -- the dope fiend that continues to sell drugs to

11   support his habit, he gets involved in higher levels because

12   of the amount that is being trafficked.

13          Query whether career offender is -- again, don't

14   get me wrong, not saying under the law he is not a career

15   offender -- whether that sentence is the best way to

16   accomplish the goals of accountability, rehabilitation, and

17   punishment.

18          But, again, that's why I get paid the extra five

19   bucks to make these decisions.  But go ahead.  I appreciate

20   your comments, and I want to let you conclude.

21          MR. ELLISON:  Thank you, Your Honor.  Unless the

22   Court has any further questions, our recommendation is to

23   follow the guideline sentence to go to the low end of the

24   resulting guidelines after the application of a two-level

25   downward variance and sentence defendant to 210 months to be
```

1    followed by a term of five years of supervised release.

2         THE COURT:  Thank you, Mr. Ellison.  I appreciate

3    the argument.  I appreciate both counsel engaging with me on

4    my questions.

5         Okay.  So I have heard from everyone here.  Again,

6    it appears from the discussion no one has an issue at all

7    with respect to the calculations.

8         The government has noted its objection to the

9    recent case law but acknowledges that Mr. Olayvar is

10   eligible for the safety valve, which means that the Court

11   can go below the mandatory minimum sentence in this case.

12        The Plea Agreement is accepted in this case.  The

13   report is accurate.  I have a question about whether he

14   should get minor role, but I think that's not really

15   relevant as it relates to this case.  And in fairness to

16   Mr. Rosen and the government and probation, in the scheme of

17   this organization, he clearly had a lesser role than the

18   other participants.

19        The guidelines are the starting point in this

20   case.  I have taken into account the most recent version of

21   those guidelines.  The total offense level based on the

22   guidelines in this case is 34 at Criminal History

23   Category VI.  Under the guideline calculation the offense

24   level is 262 to 327.

25        I recognize the government has made a two-level

```
 1   variance request.  That puts him down to 210 versus 262.
 2   The supervised release range is two to five years.  The fine
 3   range is $35,000 to $10 million.
 4          In making an individualized determination based on
 5   the facts, I am considering the factors in 3553(a) including
 6   the nature and circumstances of the offense.
 7          This is a serious offense.  The dark web is
 8   designed -- the dark web has been utilized to engage in some
 9   very devious criminal activity and a whole host of levels
10   including the activity as in this case.
11          I also have to consider the nature and the history
12   and characteristics of this defendant.  It's not his first
13   time at the rodeo.  He has been in and around the criminal
14   justice system virtually his whole life.
15          I believe almost every single offense stems from
16   an addiction to narcotics.  It's not an excuse.  It's just
17   the reality.  And we do have to recognize that that
18   addiction -- I have seen it time and time again -- has
19   brought defendant after defendant after defendant here to
20   get -- to be involved in serious narcotics offenses that has
21   serious consequences.
22          The sentence needs to reflect the seriousness of
23   the offense and to promote respect for the law and a just
24   punishment, to provide adequate deterrence, and to protect
25   the public from further crimes.
```

|    |                                                                      |
|----|----------------------------------------------------------------------|
| 1  | At the same time, the sentence should also provide                   |
| 2  | opportunity for treatment so that we can try hopefully to             |
| 3  | address those issues.  It appears based on what I've                  |
| 4  | reviewed, he has either not either availed himself of those           |
| 5  | opportunities or been given those opportunities.                      |
| 6  | I have considered the whole host of sentences                         |
| 7  | that -- or the range of possible sentences in this case.  I           |
| 8  | will tell you I intend to vary from this case further below           |
| 9  | what the government's recommending.  I just think 17 1/2              |
| 10 | years is unnecessary given the history and characteristics           |
| 11 | of this defendant.                                                    |
| 12 | Don't get me wrong.  The sentence that I impose                       |
| 13 | will probably make both sides upset, which makes me think             |
| 14 | maybe I am doing it right.  But I am not intending to go              |
| 15 | down to 60 months, but I am not intending to impose a                 |
| 16 | sentence of 17 1/2 years.                                             |
| 17 | So I do intend to vary from the guidelines.  I                       |
| 18 | think that Mr. Olayvar's documented history of narcotics              |
| 19 | addiction, no disputing, sort of, his involvement in this             |
| 20 | organization and why he was involved in this activity -- my          |
| 21 | hope is that this sentence will be the wake-up call that he           |
| 22 | needs to know that, hey, if times get hard, this is not the           |
| 23 | answer.                                                               |
| 24 | So I do intend to vary below the guidelines in                        |
| 25 | this case, and I will now state the sentence, but I want to          |

```
 1   give counsel a final opportunity to make any legal

 2   objections before the sentence is now imposed.

 3          Does either counsel know of any reason other than

 4   what has been stated as to why the sentence should not now

 5   be imposed?

 6          Mr. Ellison.

 7          MR. ELLISON:  No, Your Honor.

 8          THE COURT:  Mr. Rosen.

 9          MR. ROSEN:  No, Your Honor.

10          THE COURT:  I find that the following sentence is

11   reasonable and is sufficient but no greater than necessary

12   to comply with the purposes stated in Title 18 United States

13   Code Section 3553(a).

14          It is ordered Mr. Olayvar shall pay to the

15   United States a special assessment of $100 which is due

16   immediately.  Any unpaid balance shall be due during the

17   period of imprisonment at a rate of not less than $25 per

18   quarter and pursuant to the Bureau of Prisons Inmate

19   Financial Responsibility Program.  I am going to waive any

20   fines in this case as Mr. Olayvar is not in any position to

21   pay any fines.

22          Pursuant to the Sentencing Reform Act of 1984, it

23   is the judgment of this Court that the defendant, Thomas

24   Olayvar, is hereby committed to Count 1 of the single count

25   Information to the custody of the Bureau of Prisons for a
```

1    term of 100 months.

2          Upon release from imprisonment, Mr. Olayvar shall

3    be placed on supervised release for a term of five years

4    under the following terms and conditions:

5          He shall comply with the rules and the regulations

6    of pretrial and probation and Second Amended General Order

7    20-04.

8          He shall refrain from unlawful use of a controlled

9    substance and shall submit to one drug test within 15 days

10   of release from custody and at least two periodic drug tests

11   thereafter not to exceed eight tests per month.

12         He shall participate in outpatient substance abuse

13   treatment and counseling program that includes urinalysis,

14   breath and/or sweat patch testing as directed by the

15   probation officer.

16         He shall abstain from using alcohol and illicit

17   drugs and from abusing prescription medication.

18         As directed by your probation officer, you shall

19   pay all or part of the costs of your Court ordered treatment

20   and shall provide proof of that payment to the probation

21   officer.

22         If you don't have the ability to make the

23   payments, no payment will be required.

24         While under supervision you shall pay the special

25   assessment.

```
 1          If you are not employed while on supervision, you
 2   shall perform at least 20 hours of community service per
 3   week.  If you are employed, you don't have to do that.
 4          You shall -- this is very important -- all of
 5   these conditions are important, but this one I want you to
 6   pay particular attention to.
 7          You shall submit your person, your property, your
 8   house, residence, vehicle, papers, computers, cell phones,
 9   other electronic communications or data storage devices or
10   media, e-mail accounts, social media accounts, cloud storage
11   accounts, or any other areas under your control to a search
12   conducted by a probation officer or law enforcement officer.
13          Failure to submit to that search may be grounds
14   for revocation.  You shall warn any other occupants that the
15   premises that you reside in together are subject to those
16   conditions.
17          Now, the search must be conducted at a reasonable
18   time and in a reasonable manner based on reasonable
19   suspicion that you have violated the condition of
20   supervision and that the areas to be searched contain
21   evidence of this violation.
22          I say this is important because I have seen this
23   come up in cases.  You get out, you are at home, you don't
24   think you are doing anything wrong, your probation officer
25   knocks on your door.  Let's say, for example, you are living
```

```
 1    with your mom and dad, knocks on your door and says, "We
 2    need to come search the place."
 3           And you say, "I haven't done anything wrong.  I'm
 4    not letting you do that."
 5           Probation officer says, "Okay, fine," walks away.
 6           They send a letter to the Court indicating that
 7    you did not authorize a search and they had reason to
 8    believe that you had violated the condition, just based on
 9    that fact alone I can bring you into court, send you back to
10    prison.  You may not have done anything wrong, but the mere
11    fact that you refused the search, I could send you back to
12    prison.
13           Similarly, in a scenario -- let's say you are
14    living with your parents, your parents say, "You can't come
15    search here.  This is my house.  I pay the mortgage here,"
16    your obligation is to let them know, by virtue of your
17    supervision status, you have that condition, and so they
18    have to know that probation can come in.  And if they are
19    not allowed entry, again, it comes back to me.
20           Do you understand that, sir?
21           THE DEFENDANT:  Yes, sir.
22           THE COURT:  All right.  And you shall cooperate in
23    the collection of a DNA sample.
24           I authorize probation and pretrial to disclose the
25    presentence report to any substance abuse treatment
```

```
1    provider.  Further redisclosure has to be done with the
2    approval of this Court.
3            Mr. Olayvar, I am just going to talk to you man to
4    man.  I am sure you are not happy about this sentence.
5    Bottom line is you wouldn't be happy about any sentence
6    because you are going to prison.
7            But I gave you, at least in my opinion, a huge
8    break.  You were looking at almost 20 years, and I cut that
9    in half.  I am giving you an opportunity to prove to
10   yourself and this Court that you have learned your lesson.
11           Now having said that -- there is the gifts of
12   technology.  I have all of my files on my computer.  I take
13   hand handwritten notes, and I have a note that I wrote down
14   here, "Willing to give Mr. Olayvar benefit of the doubt, but
15   if he comes back, I will remember that I cut him the break
16   the first time, and the next time I will not be as
17   forgiving."
18           I have it written down here.  It's not a threat.
19   It's just you are an adult.  I just want to speak to you man
20   to man.
21           I am giving you the opportunity to do like your
22   lawyer said, to do something different.  You have got to do
23   this bid, you are going to be there for a little while, but
24   you are young.  You have a lot of life ahead of you, and you
25   have skills that you can use if you want to when you get
```

```
 1    out.
 2              Again, this is not a -- it's not -- I don't mean
 3    this to come off as an aggressive conversation.  I just want
 4    to have a frank conversation so that you know what this
 5    Court expects of you and my hope is what you expect of you.
 6    You owe it to yourself to do something different.  This
 7    addiction has gripped you for too long, and I hope this
 8    stint in your life enough is enough.  All right, sir?
 9              THE DEFENDANT:  Yes, sir.
10              THE COURT:  Do you have any questions of me, sir?
11         (No response.)
12              THE COURT:  Do you have any questions of me, sir?
13              THE DEFENDANT:  No, sir.
14              THE COURT:  All right.  Now, sir, you have a right
15    to appeal this conviction and sentence if you feel the
16    conviction or the sentence was somehow unlawful.
17              Now, you may have limited your right to appeal
18    pursuant to your Plea Agreement.  Generally those waivers
19    are enforceable.  However, if for some reason you think it's
20    unenforceable, you can present that theory to the Court of
21    Appeals; and, generally speaking, with few exceptions, you
22    must file that Notice of Appeal within 14 days of the
23    judgment being entered.
24              Do you understand that, sir?
25              THE DEFENDANT:  Yes, sir.
```

```
 1              THE COURT:  All right.  This is a single count
 2    information; correct?
 3              MR. ELLISON:  That is correct.
 4              THE COURT:  So there are no remaining counts to be
 5    dismissed; right?
 6              MR. ELLISON:  Yes.
 7              THE COURT:  Sir, you are remanded back to the
 8    custody of the United States marshal.  My hope is, like I
 9    said -- I may have said earlier -- I hope this is the last
10    time you and I see each other because, if I see you back
11    again, it's not going to be pretty.  Just, again, just being
12    honest with you.  All right, sir?
13              THE DEFENDANT:  Okay.
14              THE COURT:  Thank you all.  That concludes this
15    hearing.
16              MR. ROSEN:  Pardon me, Your Honor.
17              THE COURT:  I'm sorry.  I think I know what you
18    are going to ask.
19              MR. ROSEN:  I have three --
20              THE COURT:  Victorville, RDAP.  What's the third?
21              MR. ROSEN:  I have three things.  One, the Court
22    recommend RDAP; two, because of my understanding that FCI
23    Victorville does have a Unicore program that Mr. Olayvar
24    would be particularly interested in, we would ask that the
25    Court recommend to the Bureau he be considered for FCI
```

```
 1   Victorville.  The third recommendation would be, I suppose,
 2   to the Marshals Service.  As I had indicated in my
 3   sentencing memorandum, Mr. Olayvar has been advising me
 4   repeatedly of health and medical problems, and he's being
 5   housed at the San Luis Regional Detention Center in Arizona.
 6          He tells me he is not getting appropriate
 7   treatment.  We would ask that the Court recommend to the
 8   Marshals Service that he be detained at a facility other
 9   than San Luis Regional Detention Center while the Bureau is
10   evaluating his placement.
11          THE COURT:  I will make all three of those
12   recommendations that he be housed -- well, be considered for
13   RDAP, be housed at FCI Victorville to serve his sentence,
14   and that he is -- does it make sense to make a
15   recommendation that he be housed anywhere other than at
16   SLDRC or just that he gets a medical evaluation while he is
17   here in Los Angeles?
18          MR. ROSEN:  That might be the better
19   recommendation, for a medical evaluation while he is present
20   in Los Angeles.
21          THE COURT:  Remind me again, is it teeth issue?
22          MR. ROSEN:  It was dizziness and fatigue.
23          THE DEFENDANT:  Here is one the letters they sent
24   back to me.
25          MR. ROSEN:  Again, recently he sent me several
```

```
1   documents that he has submitted to the program at LaSalle.
2   This one -- I don't know what the date is.  It says, "you
3   were seen by a nurse and that you are on a list to be seen,"
4   but this was dated -- I don't know when.
5           THE COURT:  I will make a recommendation that he
6   be seen -- get a medical evaluation as soon as possible by
7   the Bureau of Prisons here in this region.  But again --
8           MR. ROSEN:  Or the marshals service.  He is in --
9           THE COURT:  Or in the marshals service.  Again,
10  these are recommendations.  I don't want to mislead you and
11  say that, poof.  It's going to happen.  I have made those
12  recommendations, and let's hope for the best.  All right,
13  sir?
14          THE DEFENDANT:  Thank you, sir.
15          THE COURT:  Thank you all.
16          Anything else, Mr. Rosen?
17          MR. ROSEN:  No, Your Honor, thank you.
18          THE COURT:  Mr. Ellison.
19          MR. ELLISON:  No, Your Honor, thank you.
20          THE CLERK:  All rise.  This Court is in recess.
21      (Proceedings concluded at 12:18 p.m.)
22                          --oOo--
23
24
25
```

```
 1                              CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  July 20, 2021.

11

12

13

14                    ___/S/ CHIA MEI JUI _____

15                    Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```