```
            UNITED STATES DISTRICT COURT

    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

    HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE


UNITED STATES OF AMERICA,     )
                              )
          PLAINTIFF,          )
                              )
     vs.                      ) No. CR 21-0421-AB
                              )
ANDRES MATIAS BERMUDEZ,       )
                              )
          DEFENDANT.          )
_____)




          REPORTER'S TRANSCRIPT OF PROCEEDINGS

                FRIDAY, OCTOBER 1, 2021

                     11:31 A.M.

                LOS ANGELES, CALIFORNIA
```

---

**CHIA MEI JUI, CSR 3287, CCRR, FCRR**
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA 90012
cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3        OFFICE OF THE UNITED STATES ATTORNEY
          BY: KEITH D. ELLISON
 4        ASSISTANT U.S. ATTORNEY
          312 NORTH SPRING STREET
 5        13TH FLOOR
          LOS ANGELES, CALIFORNIA 90012
 6        (213) 894-2434

 7
     FOR THE DEFENDANT:
 8
          SIDLEY AUSTIN LLP
 9        BY:  DOUGLAS A. AXEL, ATTORNEY AT LAW
          555 WEST 5TH STREET
10        SUITE 4000
          LOS ANGELES, CALIFORNIA 90013
11        (213) 896-6178

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 1, 2021

 2                            11:31 A.M.

 3                              - - -

 4            THE CLERK:  Calling CR 21-421, United States of

 5   America versus Andres Matias Bermudez.

 6            Counsel, please state your appearances.

 7            MR. ELLISON:  Good morning, Your Honor.

 8            Keith Ellison for the United States.

 9            THE COURT:  Good morning.

10            MR. AXEL:  Good morning, Your Honor.

11            Douglas Axel on behalf of the defendant who is

12   present here by video.

13            THE COURT:  Good morning to both of you.

14            Mr. Bermudez, I just want to confirm -- are you

15   okay with us proceeding via videoconferencing today?

16            THE DEFENDANT:  Yes, sir.

17            THE COURT:  We are here for status conference.

18            I have had a chance to take a look.  This is an

19   Information -- an Information has been filed with respect to

20   the charges of distribution and possession with the intent

21   to distribution methamphetamine.

22            Mr. Ellison, tell me what's this case about.

23            MR. ELLISON:  Mr. Bermudez is charged with two

24   counts of distribution or possession with the intent to

25   distribute more than 50 grams of methamphetamine.  This was
```

1    two separate incidents related to some other cases before
2    the Court.
3            On February 11th of 2020, federal agents searched
4    two locations related to a dark web drug vendor.  At one of
5    those locations, they found approximately 16.6 kilograms of
6    methamphetamine.
7            Based on subsequent investigation, we identified
8    Mr. Bermudez as the person who provided that 16.6 kilograms
9    of methamphetamine.  More specifically the individual who
10   possessed that methamphetamine, we found messages on his
11   phone with Mr. Bermudez talking about the sale.
12           THE COURT:  Mr. Ellison, you said that this
13   relates -- maybe I misheard you.  Did you say this relates
14   to another case that I have?
15           MR. ELLISON:  Correct, Your Honor.
16           There are actually -- these cases were charged at
17   separate times.  So recently you sentenced Thomas Olayvar
18   who was one of the individuals living at this house.  You
19   also have another case with Mark Chavez, and I can give the
20   Court the case numbers if you would like.
21           THE COURT:  I don't need the names.  The names
22   sound familiar now.  So this is all part and parcel of that
23   investigation?
24           MR. ELLISON:  Correct.  Count 1.
25           THE COURT:  Should I assume that you were talking

1  about text messages, presumably, from one or more of the
2  co-defendants in this case that connected them to
3  Mr. Bermudez?
4          MR. ELLISON:  Co-conspirators that are charged in
5  separate cases, yes, Your Honor.
6          THE COURT:  All right.  So that is Count 1.
7          What about Count 2?
8          MR. ELLISON:  On Count 2, unrelated to the
9  investigation, L.A. Sheriffs stopped Mr. Bermudez for a
10 traffic violation.
11         During the stop he had a methamphetamine pipe on
12 his passenger seat.  When they asked him if he had anything
13 else illegal in the vehicle he responded that he had
14 methamphetamine.  That methamphetamine was later confirmed
15 to be 58 grams of actual methamphetamine.  That that is the
16 charge in Count 2.
17         But perhaps, more importantly, he also had the
18 phone with him that he used to communicate with the
19 co-conspirators charged in other cases.
20         THE COURT:  Okay.  And what do you anticipate the
21 trial estimate will be in this case?
22         MR. ELLISON:  Your Honor, this will be about
23 three-day trial.  I anticipate there will be six to seven
24 witnesses.
25         THE COURT:  So I assume you are going to call the

1   LASD deputy who did the stop?  As it relates to Count 1, who
2   are we talking about as far as witnesses go?  Are we talking
3   about agents that -- agents involved in the initial
4   investigation or agents just involved in the search warrant
5   or both?
6           MR. ELLISON:  It would be -- the agents were
7   involved in this investigation throughout.  So we would have
8   agents testifying to the search warrant to the search of the
9   phone and to the subsequent identification of Mr. Bermudez.
10          We would also call, obviously, a lab expert if the
11  defense and I weren't able to work out some type of
12  stipulation as to the nature of the substances found.
13          THE COURT:  With respect to the LASD stop, let's
14  start with Count 2 first.  You indicate that Mr. Bermudez
15  made some statements about methamphetamine.
16          Was there a body camera used in that stop at all?
17  I don't know if the deputies had it at the time.
18          MR. ELLISON:  There was not, Your Honor.
19          THE COURT:  And are there any other statements
20  alleged -- allegedly made by Mr. Bermudez as it relates to
21  Count 2?
22          MR. ELLISON:  Your Honor, during a Mirandized
23  interview after his arrest, Mr. Bermudez admitted the
24  methamphetamine belonged to him as well.
25          THE COURT:  And at the time of the stop -- I know

1  you said it's unrelated, but you said the phone that you
2  believe was used to contact co-conspirators, were there any
3  conversations or questions made of Mr. Bermudez about that
4  phone and his ownership of the phone and text messages that
5  he made on that phone at the time of that stop?
6            MR. ELLISON:  Yes, Your Honor.
7            When -- in that same -- well, I shouldn't say in
8  the same post-Miranda interview.  As part of the arrest
9  process, Mr. Bermudez provided his phone number, and the
10 phone number he provided was the phone number that he used
11 to communicate with the co-conspirators.
12           THE COURT:  Were there any discussions or
13 interrogation of Mr. Bermudez with respect to that phone and
14 the contents contained in that phone?
15           MR. ELLISON:  No, Your Honor.
16           THE COURT:  Okay.  Any other statements allegedly
17 made by Mr. Bermudez at the time of that stop?
18           MR. ELLISON:  No, Your Honor.
19           THE COURT:  As it relates to Count 1, that was a
20 search warrant.  And if I remember -- you mentioned, and I
21 remember from Olayvar's case, it was a search.  They found
22 this stuff.  I assume Mr. Bermudez was not there at the time
23 of the search; correct?
24           MR. ELLISON:  That is correct, Your Honor.
25           In fact, the text messages and review of cell site

1  location information shows that Mr. Bermudez sold the
2  methamphetamine to the co-conspirator the evening before.
3        THE COURT: And tell me the evidence that suggests
4  that he sold the methamphetamine the evening before.
5        MR. ELLISON: Sure.
6        Your Honor, there were a number of messages
7  between this particular co-conspirator and Mr. Bermudez
8  showing an ongoing relationship for -- through which
9  Mr. Bermudez either sold or brokered the sale of
10 methamphetamine to his co-conspirator.
11       For instance, on February 7th of 2020, he
12 messaged -- I am just going to give the pertinent part of
13 the message --
14             (Reading:) I could get you some
15        real good nice and chunky for a good price as
16        many as 30 pound-plus for 975 -- $975.
17       On the night of February 10th, he messaged the
18 co-conspirator --
19             (Reading:) My boy just called me.
20        He said there is going to be 200 of them
21        around 4:30, 5:00 P.M. Let me know how many
22        you want so he could put them to the side.
23       The co-conspirator responded that he would be
24 ready at 8:00.
25       But another relevant thing that happened that

1    night is the co-conspirator -- Mr. Bermudez messaged the
2    co-conspirator an address in East Los Angeles.  We have
3    messaged -- phone information showing that that
4    co-conspirator used a navigation app to go to that address
5    around 9:54 P.M.
6         Shortly after around 11:03 P.M., two other
7    co-conspirators were messaging with each other in which the
8    co-conspirator that met with Mr. Bermudez said, "Hey, I got
9    another 40 --"
10        THE COURT:  "I got another --"
11        MR. ELLISON:  "40," which was consistent with the
12   16.6 kilograms that were found in that co-conspirator's home
13   in the morning.  And again cell site information places
14   Mr. Bermudez and this co-conspirator in the same place at
15   that same time.
16        THE COURT:  Okay.
17        Any statements or interviews of Mr. Bermudez in
18   connection with Count 1?
19        MR. ELLISON:  No, Your Honor.
20        THE COURT:  Okay.  Let's talk about discovery.
21        What discovery exists?  What discovery has been
22   provided to the defense at this point?
23        MR. ELLISON:  Your Honor, I have provided the
24   defense with all the discovery related to the underlying
25   search and the subsequent investigation that I just

1  described including the cell site information.  I have
2  informed Mr. Axel that there may be additional cell site
3  investigation taken from these phones that wasn't really
4  relevant to the conduct that I would make available or
5  provide to him as he wishes.
6          But at this point, all relevant discovery has been
7  provided and otherwise made available.
8          THE COURT:  Any additional discovery that you
9  anticipate being generated or -- that's out there, for that
10 matter, that you need to turn over to Mr. Axel?
11         MR. ELLISON:  Your Honor, there are statements of
12 co-conspirators that may be provided to Mr. Axel prior to
13 trial.  I have informed Mr. Axel about those co-conspirators
14 and their potential testimony in this case.
15         THE COURT:  Okay.  Thank you.
16         Mr. Axel, first off, good to see you.  I
17 understand you have been quite busy in the Roybal building
18 in the last couple days.
19         MR. AXEL:  The news travels.
20         THE COURT:  Yes, indeed.
21         And so let me ask from your perspective what, if
22 anything, do you need from the government at this time or
23 from the Court at this time?
24         MR. AXEL:  Thank you, Your Honor.
25         I will say it's been good working with

1     Mr. Ellison.  I think we're in a -- good shape there.  The
2     one thing we are waiting on is a Preplea Report.
3            We had raised that at really at the -- in
4     connection with the initial appearance, and Magistrate
5     Judge Wilner did issue an order for a Preplea Report back
6     then, and we've kind of been waiting on that to further this
7     process.  And as soon as we get that, I think it will --
8     things will move along pretty efficiently.
9            I do not expect a November 2nd date one way or
10    another.  I do not expect that date will hold, and we'll
11    just have a better sense of what date to request.  Once the
12    Preplea Report comes, I plan to then go down to MDC and
13    spend a fair bit of time with my client at that time.  But
14    we've been kind of holding up that until we get the
15    Preplea Report.
16          THE COURT:  You touched upon the issue that I was
17    going to ask next.
18          We've got a November 2nd trial date.  Do we need
19    to do anything with respect to that at this time?  Or do you
20    want to wait for the Preplea Report, or wait to find out the
21    status of it and then meet and confer with the government to
22    determine if that date is going to stay or get moved?
23          MR. AXEL:  Yeah, it's kind of up to the Court.
24          I don't have any problem kicking it out now and
25    giving us a little more time.  We have my client here with

1    us if the Court would like to take waivers.
2            I haven't had a chance, frankly, to discuss it in
3    advance with COVID and everything, but I do expect my client
4    would be amenable to a continuance now to give us time to
5    sort through things once we get the Preplea Report.  Or we
6    can get that Preplea Report and put in a stip within a week
7    or so after getting the Preplea Report.  Either way would be
8    fine with me.
9            THE COURT:  Okay.  Let's do this.  Just in
10   fairness to you, you haven't had a chance to meet with the
11   client.  Let me just talk with Mr. Bermudez.
12           Mr. Bermudez, I don't know you.  This is the first
13   time we are meeting.  I don't know what your experience is
14   with the criminal justice system, but I will just say this
15   for no other reason just other than experience.
16           I know your lawyer.  I have known your lawyer for
17   a long time.  You are in good hands as it relates to him.  I
18   can assure you of that.
19           Your lawyer has indicated that -- well, let me
20   step back.  Right now you have a jury trial date of November
21   the 2nd.  Your lawyer has indicated there are some things he
22   wants to look into, what's called a Preplea Report, to look
23   at your background and also look at the discovery in the
24   case, talk you with.  He's indicated that he doesn't believe
25   that he will be ready to proceed on November the 2nd for

1    trial.
2              I am just letting you know that that's what he is
3    saying.  You have a right to have a trial within 70 days of
4    your initial appearance.  That's why the trial date has been
5    set for November 2nd.
6              That can only be moved if you agree to it.  I am
7    not asking you whether you agree to it.  I am just letting
8    you know that your lawyer has indicated he is going to want
9    to talk with you to ascertain whether that date should be
10   moved.
11             He's indicated the reasons why he thinks, but he
12   will talk with you about it.  But I just want to make sure
13   you understand what we've been talking about here this
14   morning.
15             THE DEFENDANT:  Yes, sir.
16             THE COURT:  Okay.  All right.  Great.
17             So just -- out of fairness, I will let you,
18   Mr. Axel, talk with Mr. Bermudez.  If you agree to move the
19   date, file the necessary paperwork, and I will sign off on
20   that.  And we'll make sure -- I am going to make sure on our
21   end -- I just want to follow up and make sure that the
22   Pretrial Services office has gotten this request for a
23   Preplea Report.  So I will do that on my end.
24             Anything else that you need, Mr. Axel?
25             MR. AXEL:  No, Your Honor.  Thank you.

1     THE COURT: Mr. Ellison, anything further before
2 we wrap up this hearing today?
3     MR. ELLISON: No, Your Honor.
4     But I would note that I was contacted by a
5 pretrial probation officer regarding the Preplea Report, and
6 I am aware that probation is working on the report, and I
7 will similarly follow up with that officer.
8     THE COURT: That's good to know.
9     If there is nothing further, we'll wrap up this
10 hearing. Everyone, have a good weekend. Stay safe, and
11 then I will see you at or near the trial date or any other
12 hearings that come up in this case. Thank you all.
13     MR. ELLISON: Thank you, Your Honor.
14     MR. AXEL: Thank you.
15     THE DEFENDANT: Thank you.
16     (Proceedings concluded at 11:45 a.m.)
17                         --oOo--
18
19
20
21
22
23
24
25

```
 1                         CERTIFICATE
 2
 3       I hereby certify that pursuant to Section 753,
 4    Title 28, United States Code, the foregoing is a true and
 5    correct transcript of the stenographically reported
 6    proceedings held in the above-entitled matter and that the
 7    transcript page format is in conformance with the
 8    regulations of the Judicial Conference of the United States.
 9
10    Date:  November 6, 2022.
11
12
13
14                         /S/ CHIA MEI JUI
15                       Chia Mei Jui, CSR No. 3287
```