1        UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3     HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5  UNITED STATES OF AMERICA,        )
                                    )
6                  PLAINTIFF,       )
                                    )
7           vs.                     ) No. CR 21-0421-AB
                                    )
8  ANDRES MATIAS BERMUDEZ,          )
                                    )
9                  DEFENDANT.       )
   _____ )

10

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14            FRIDAY, AUGUST 5, 2022

15                3:33 P.M.

16          LOS ANGELES, CALIFORNIA

17

18

19

20

21

22  _____

23        **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
          FEDERAL OFFICIAL COURT REPORTER
24        350 WEST FIRST STREET, ROOM 4311
          LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:

 3          OFFICE OF THE UNITED STATES ATTORNEY
            BY: RACHEL AGRESS
 4          ASSISTANT U.S. ATTORNEY
            312 NORTH SPRING STREET
 5          13TH FLOOR
            LOS ANGELES, CALIFORNIA 90012
 6          (213) 894-2434

 7

      FOR THE DEFENDANT:
 8
            SIDLEY AUSTIN LLP
 9          BY:  DOUGLAS A. AXEL, ATTORNEY AT LAW
            555 WEST 5TH STREET
10          SUITE 4000
            LOS ANGELES, CALIFORNIA 90013
11          (213) 896-6178

12
      ALSO PRESENT:
13
            CHRISTOPHER HICKS, SPECIAL AGENT WITH HOMELAND
14    SECURITY INVESTIGATIONS

15
            REX CASTRO, POSTAL INSPECTOR WITH UNITED STATES
16    POSTAL INSPECTION SERVICE

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; FRIDAY, AUGUST 5, 2022

 2                          3:33 P.M.

 3                           - - -

 4              THE CLERK:  Calling CR 21-421, United States of

 5    America versus Andres Matias Bermudez.

 6              Counsel, please state your appearances.

 7              MR. AXEL:  Good afternoon, Your Honor.

 8              Douglas Axel on behalf of the defendant who is

 9    present in custody.

10              THE COURT:  Good afternoon, sir.

11              MR. AXEL:  If I may grab the defendant's family.

12    I thought we were going to be going next.

13              THE COURT:  Go ahead, please.

14              MS. AGRESS:  Your Honor, if the government could

15    grab the agents who are outside as well.

16              THE COURT:  Go ahead.

17         (Brief pause in proceedings.)

18              MS. AGRESS:  Good afternoon, Your Honor.

19              This is Rachel Agress appearing on behalf of the

20    United States instead of AUSA Ellison.

21              THE COURT:  Good afternoon.

22              And are the agents going to be sitting with you?

23              MS. AGRESS:  Yes, Your Honor.  And next to me at

24    counsel table I have two agents from Homeland Security, and

25    I will let them introduce themselves.
```

1        SPECIAL AGENT HICKS:  Christopher Hicks, I'm a

2   special agent with Homeland Security Investigations.

3        INSPECTOR CASTRO:  I'm Rex Castro, postal

4   inspector with the United States Postal Inspection Service.

5        THE COURT:  Mr. Bermudez is present in custody.

6        We are here today for sentencing in this case.  I

7   have had a chance to review the presentence report, the

8   objections to the presentence report, the addendum to the

9   presentence report, as well as the government's position and

10  the defendant's position of sentencing memorandum in

11  connection with this case.

12       Mr. Axel, do you want to step at the lectern?

13       MR. AXEL:  Yes, Your Honor.

14       THE COURT:  Have you had a chance to -- or I

15  should say have you had enough time to go over the

16  presentence report with Mr. Bermudez?

17       MR. AXEL:  Yes, we have, Your Honor.

18       THE COURT:  Okay.  And did you explain the

19  contents of the report to him?

20       MR. AXEL:  Yes, I did.

21       THE COURT:  Do you have any concerns about his

22  ability to understand the report?

23       MR. AXEL:  I do not.

24       THE COURT:  Mr. Bermudez, did you go over the

25  presentence report with your lawyer?

```
 1                    THE DEFENDANT:  Yes, sir.

 2                    THE COURT:  And did you understand the report?

 3                    THE DEFENDANT:  Yes.

 4                    THE COURT:  Do you need any more time to go over

 5       the report?

 6                    THE DEFENDANT:  No, sir.

 7                    THE COURT:  Okay.  All right.

 8                    So, Mr. Axel, do you want to contest or change

 9       anything in the presentence report other than what has been

10       submitted in writing?

11                    MR. AXEL:  No, Your Honor.

12                    THE COURT:  At this time the floor is yours if you

13       want to make your presentation as to what you think the

14       appropriate sentence is in this case.

15                    MR. AXEL:  Yes, Your Honor.  Thank you.

16                    I don't want to rehash everything in the papers.

17       I know the Court has considered them.  I do want to

18       emphasize a couple of points that I think are particularly

19       salient.  I think it is significant that here -- the offense

20       here is really the brokering of a single wholesale

21       transaction.

22                    THE COURT:  Is it -- I mean -- brokering.  Your

23       view is that he just acted as a go-between?

24                    MR. AXEL:  Yes, Your Honor, and I think the

25       evidence bears that out.
```

1          THE COURT:  What significance, if any, is there in

2    the fact that what he was the go-between for was 30 pounds

3    of methamphetamine versus your person on the corner just

4    pedaling -- and I don't mean to minimize it -- but pedaling

5    bags of it.  This is a lot of product.

6          MR. AXEL:  It was a significant amount, and that's

7    why he is facing the mandatory minimum and the --

8          THE COURT:  He is facing the mandatory minimum.

9    It could have been far less than 30 pounds, and I guess

10   that's my point.  It's one thing to hit the mandatory

11   minimum amount.  He's done that tenfold over.

12         And the question is that what weight, if any, no

13   pun intended, should that have in determining his role?

14   Because I am assuming your view is he is just a go-between,

15   he doesn't know.  The government is going to say nobody is

16   brokering 30 pounds if they're just sort of a one-off

17   person.

18         MR. AXEL:  Well, I haven't heard them say that.  I

19   don't think it's accurate.  I do think, yes, it's obviously

20   an important fact.

21         If it was a small amount, he wouldn't be facing

22   the time he is facing.  I think his sentence would be a lot

23   less than ultimately what he is going to get.

24         However, I also think it is very significant that

25   it was one time, and he was the broker.  He is not the

1  heavy.  He is not the supplier.  He is not really, frankly,

2  the danger that the importer, the originator and frankly the

3  retail distributors are.

4          THE COURT:  Is there a concern that he seemingly

5  is able to know these people?  Again, going back to all of

6  our time from way back in the day, the argument is that you

7  are not talking to people who are -- you're not talking to

8  people that you don't know, trust, and have worked with when

9  you are involving this amount of drugs.  But maybe it's

10  changed from back in my day.

11          MR. AXEL:  He didn't hold the drugs.  He didn't

12  hold the money.  So in terms of the level of trust, I don't

13  think that the ultimate supplier had to have much trust.  He

14  connected them together, they did the deal.

15          And at the time -- and this is well-documented

16  too -- he was addicted to drugs, he was living out of his

17  car, in his RV.  He was not really somebody who was a mover.

18          I think that's how, frankly, Mr. Ellison views him

19  as well.  I know he is not here today, but he's not really a

20  heavy in this.  He is here to take responsibility for this

21  offense, but, in the scheme of things, he is not the kind of

22  person that, frankly, you need a specific deterrence beyond

23  the mandatory minimum, frankly.

24          Personal history shows well that this really was

25  driven by an addiction.  He was, frankly, doing this to feed

1   his addiction.  He had lost his -- when he came out of state

2   prison, he had become addicted to heroin and

3   methamphetamine.  He lost his job.  He lost his home.  He

4   lost his family, and he was doing this to support himself.

5            I do want to introduce his family who are here

6   today.  They have come out from Palmdale, including his

7   parents, Rafael Bermudez and Regina Tonchas; his brother

8   Moises Castro.  His children are all here -- Andreas,

9   Esteban, Mia, Isaias, and his aunt is also here.  We did

10  submit letters to the Court.  I think this all shows that he

11  has very strong family support.

12           I think that the record's also clear that, when he

13  gets out, he's going to -- he's not goings to recidivate.

14           There is -- briefly, the criminal history that

15  makes him ineligible for safety valve is really limited, not

16  to minimize it, not to excuse it -- I know the defendant

17  does not want to do that.  But to put it in context, all

18  three of those offenses were limited to a single

19  relationship.

20           The -- that the mother of the children has been

21  deported to Mexico is not here, and that's almost ten years

22  old, is the most recent.  Outside of that context, no

23  violence, no history, no problems other than narcotics.

24           One other main point, Your Honor, is the need to

25  avoid unwarranted disparities.  I know the government

1    mentions that as an important consideration of sentencing,

2    but the government does not make any effort to compare and

3    contrast relative culpability.  To avoid unwarranted

4    sentencing disparities -- we did cover that in the papers.

5         I reviewed the Court's sentencing transcript from

6    the Olayvar sentence where it was significant.  The

7    defendant delivered package after package through the post

8    office.  Each time they're walking in, they're deceiving the

9    postal service, they are using the mails for illicit

10   purposes, they're delivering retail drugs to particular

11   individuals, and the defendant in that case had repeated

12   occasions associated with people who move a lot of weight.

13        Here you don't see that in his history.  He did

14   not work on the retail side.  The probation officer said

15   this was unsophisticated, no weapons, no leadership role.

16   Olayvar, again, there were guns found in the apartment.

17        The government asked for a similar sentence in

18   that case.  The Court found that defendant safety valve

19   eligible, gave him 100 months.

20        Here, I think other than the previous convictions

21   that make him ineligible, I think his sentence would be more

22   like Ick, the other defendant that the Court sentenced to 60

23   months in terms of relative culpability.  He is getting more

24   because of the violent convictions under the statute.  I

25   think anything other than the mandatory minimum of 120

1   months would create a really significantly unwarranted

2   sentencing disparity.

3          With that, I think I've covered the main points,

4   happy to answer any questions.  I will say that the

5   defendant did author a letter, but it never made its way to

6   my office.  So he is prepared -- he wasn't originally

7   prepared to address the Court but would like to take the

8   opportunity obviously to address the court.

9          THE COURT:  We'll give every individual that

10  opportunity.

11         And I appreciate the family members coming in to

12  support you.  I wish -- I don't like meeting family members

13  in this circumstance, but it bodes well for you that you

14  have that familial support.

15         I guess, Mr. Axel, I am struggling with -- I think

16  you made a comment less likely to recidivate.  He's Criminal

17  History Category 6.

18         MR. AXEL:  Again, it's -- if you look at other

19  than the domestic violence conviction, not to minimize it,

20  but it is one relationship.  The last one was, I believe,

21  was in 2013.

22         THE COURT:  But then you have got possession of

23  methamphetamine in 2020.

24         MR. AXEL:  The same -- it's determined by the --

25  essentially same course of conduct.

```
 1              THE COURT:  Then robbery, attempted carjacking.

 2              MR. AXEL:  That was a mistake.  That was the

 3     original -- the probation officer recognizing that was a

 4     mistaken identity.

 5              THE COURT:  I'm sorry.  I was looking at the

 6     original PSR.  Let me go back to the revised.

 7              We go after the domestic violence.  That was, you

 8     said, in 2013.  We got possession of methamphetamine in

 9     2020.  And so your view is that, basically, because of that

10     that's a sign that he's not going to commit any further

11     crimes?

12              MR. AXEL:  I think that the -- I think it is

13     significant that the last offense really, other than this

14     offense -- and this is this 2020 possession offense is

15     determined to be same course of conduct by both the

16     probation officer and government -- they are going to give

17     him credit for that, time served on that.

18              So other than this offense to include that 2020

19     state conviction for possession, he hasn't committed any

20     offense in 13.  And other than the domestic violence

21     convictions, there really is one misdemeanor from 2010 when

22     he is 26 and then something when he was 19, and that's it.

23              The history does not show any sort of entrenched

24     repeated kind of criminal conduct apart from the addiction.

25     And I will say that, based on my own observation since he
```

1    has been in, and I think he is prepared to tell the Court

2    that, frankly, there has been no significant benefit to him

3    already from the federal custody.

4            He has cleaned himself up the hard way.  He's

5    availed himself already of what's at MDC.  He is going to

6    avail himself of the RDAP program and any educational

7    programs.  And I think that overall his criminal history

8    really just shows he hasn't done significant time, he hasn't

9    done federal time.  There is every reason to believe coming

10   out he is, with the support of his family, he is not going

11   to recidivate.

12           THE COURT:  Mr. Bermudez, anything you wish to say

13   at this time?

14           THE DEFENDANT:  First of all, I want to apologize

15   to my family for putting them through this, for making the

16   wrong choices.

17           I want to thank the Court for the attention, for

18   the time.

19           When I committed this crime, I was addicted to

20   drugs, and I did it to supply my habit.  My family, they

21   know about it.  So right now it's kind of embarrassing.  I

22   feel embarrassed by myself.

23           I look forward to treatment, drug treatment.  I

24   have been clean since I have been in.  I'm not a criminal.

25   I'm -- I don't do crime.

1          That's all I want -- I want to apologize to you,

2    sir, for wasting your time.

3          THE COURT:  Look, it's not a waste of time, sir.

4    And you don't need to apologize to me.  You need to

5    apologize to your family, which you did.  And you should be

6    thankful they are here to support you because -- look.  It's

7    changing lives.

8          You are going to prison for a long time -- even

9    under your lawyer -- ten years at least.  The government,

10   they want you to do more than that.

11         The only thing I will say to you is that don't

12   just serve your time, sir.  Have your time serve you.  Take

13   advantage of every program that you can so you can put

14   yourself in a position that you can do right by your family

15   when you get out.  You got in too deep, and you are paying

16   the price for it.

17         But I appreciate your comments, sir.  I appreciate

18   it.

19         Let's hear -- anything else, Mr. Axel?

20         MR. AXEL:  No, Your Honor.

21         THE COURT:  Okay.  Let's hear from the government.

22         Counsel, can you state your name again.

23         MS. AGRESS:  Of course, Your Honor.  It's Rachel

24   Agress on behalf of the United States.

25         THE COURT:  A-g-r-e-s?

```
 1              MS. AGRESS:  E-s-s.

 2              THE COURT:  Ms. Agress.

 3              MS. AGRESS:  Thank you, Your Honor.

 4         The government will be brief here.

 5              The government does believe that the

 6    considerations which the Court raised with respect to amount

 7    of narcotics at issue here are reflected in the guidelines

 8    enhancement based on amount, and for the reasons set forth

 9    in its papers is recommending a below guidelines range

10    sentence.

11              THE COURT:  Of 200 months; right?

12              MS. AGRESS:  Probation is recommending 200, the

13    government is recommending 219 which is reflective of

14    downward departure based on the COVID variants.

15              And the government hears what defense counsel is

16    saying but would echo the Court -- what's reflected in the

17    factual basis in the plea and the Pretrial Services report

18    is brokerage and arrangement and sales but access to this

19    amount of narcotics would not happen out of the blue, and so

20    the government maintains that the guidelines are reflective

21    of the conduct and is going to rest on its papers.

22              THE COURT:  You heard Mr. Axel indicate he never

23    touched the drugs and that suggests, sort of, not -- he is

24    not saying minor role, but his role is not -- he is not in

25    as deep as perhaps the other participants in this
```

1    conspiracy.  And you say?

2         MS. AGRESS:  To that I would respond that the

3    evidence is -- that is available to the government is the

4    arrangement of the brokering.  And so we're not -- there was

5    a text message of an address for a location where the deal

6    would take place, and then the next day the deal had taken

7    place.

8         So the government is not going to draw a

9    conclusion about whether the defendant in fact touched the

10   drugs or not, but, again, access to that amount of

11   narcotics, even if it's brokering it is -- should and is

12   reflected in the guidelines range.

13        THE COURT:  Last question at least for now is

14   what's your response to the defendant's view that, look.

15   This is all fueled by addiction and based on that, among

16   other things, that's worthy of a sentence far below what the

17   government is recommending?

18        MS. AGRESS:  Your Honor, I think the reason we are

19   where we're at in terms of the guidelines is the criminal

20   history.  The government -- based on the conduct, the

21   government thinks that a low end and, in fact, a below low

22   end sentence is appropriate.

23        But the reason we are where we are at 219 is the

24   criminal history.  And while the criminal history at this

25   point is -- a significant portion of it that doesn't relate

1  to addiction is old that is extremely severe.  And there is

2  a reason why the defendant is categorized as a career

3  offender.

4           As set out in the probation report, there is

5  details about the underlying conduct that led to the

6  conviction that got us here, and that is why the government

7  is recommending a low end sentence but one that is in line

8  with both guidelines and the criminal history.

9           THE COURT:  Thank you, counsel.  Appreciate it.

10          Mr. Axel, anything you wish to say to response?

11          MR. AXEL:  Thank you, Your Honor.

12          Again, without the convictions that put him into

13  the violence convictions, again, I think he really would be

14  comparable to Ick.  The amounts they pled to were even

15  higher.  So it's similar amounts, similar guideline range,

16  similar everything.

17          The retail side, I think, is more involved, more

18  sophisticated.  There were guns found in the apartment --

19  all kinds of reasons why those other defendants are more

20  culpable.

21          So if you are kind of laying him out as against

22  the other defendants, without these domestic violence

23  convictions, he's looking at a 60-month sentence comparable

24  to Ick.  As a result he's not eligible for the safety valve.

25  He is looking at twice that.  I think anything more than

1    that is unwarranted.

2         THE COURT:  Is it fair to make that comparison

3    given the fact that because of his record he has bumped

4    himself up?  That's what the career offender is designed

5    for -- if you meet those data points, you should get an

6    enhanced sentence.

7         Once he has been designated career offender, can

8    you really make the comparison with his co-defendants?

9         MR. AXEL:  I think we -- yes, I think you can

10   under 3553.  When you are looking at unwarranted

11   disparities, I think you are saying, yeah.  He is going to

12   get double Ick, he is going to get 20 months more than

13   Olayvar who had previous serious narcotics convictions that

14   this defendant doesn't, and he is going to get more than

15   both of them as a result of this.

16        THE COURT:  It's as a result of his career

17   offender status.

18        MR. AXEL:  It's a result of these convictions that

19   qualify under career offender status, yes.

20        And I'm just saying, if you really look at those

21   in context, it's not deserving of more.  Anything more than

22   the 120 is unwarranted.  When you look over all the relative

23   culpability for this conduct relative to those others where

24   there is guns found and very sophisticated activity, and

25   when you look at the comparison in criminal history, yes, he

1   is going to get more.  Anything more than the 120 becomes

2   really unwarranted disparity.  That's how I see it.

3           THE COURT:  Okay.  Well, there is no dispute I

4   believe as it relates to the presentence report calculation

5   of the guidelines.  The dispute is whether or not -- whether

6   the sentence should be within -- where the sentence should

7   be.

8           He's total offense level 35, criminal history

9   category 6.  The guideline range is 292 to 365 months.

10  Supervised release range is a statutory mandatory minimum of

11  five years.  The fine range is 40,000 to $10,000,000.

12          I recognize and acknowledge the variance that the

13  government has given in connection with the Plea Agreement

14  in this case.  I find -- I will accept the Plea Agreement to

15  that end.  I find the report to be accurate in this case,

16  the revised report.

17          I have talked about the guideline calculation.  In

18  making an individualized determination based on the facts, I

19  am considering the factors described in 3553(a) exclusively

20  but not limited to the nature and circumstances of the

21  offense -- it's a significant amount of narcotics.  And

22  there is debate on what that means, but it is a significant

23  data point at least in the Court's mind -- the need for the

24  sentence to reflect the seriousness of the offense, to

25  protect the public from further crimes, the kinds of

1    sentences that are available, and defendant's individual

2    circumstances and characteristics.

3            He said it today.  It's clear in the record that

4    narcotics fueled a lot of his activity.  But the reality of

5    it is he is still a Criminal History Category 6, which is

6    difficult for the court to just -- not ignore, but I have to

7    consider that he has hit career offender status.

8            That has enhancements that the powers that be have

9    designated, and that's in part why his guideline range is so

10   high.  I don't think it is worth 292 months certainly, but I

11   am not convinced it is worth 120 months.

12           So I will now state the final sentence, but I want

13   to give counsel a final chance to make any legal objections

14   before the sentence is imposed.

15           Does either counsel know of any reason other than

16   what's been stated why the sentence should not now be

17   imposed?

18           Ms. Agress?

19           MS. AGRESS:  Nothing from the government.

20           THE COURT:  Mr. Axel?

21           MR. AXEL:  No, Your Honor.

22           THE COURT:  I find that the following sentence is

23   reasonable and sufficient but no greater than necessary to

24   comply with the purposes stated in Title 18 United States

25   Code Section 3553(a).

1    It's ordered that Mr. Bermudez will pay to the

2  United States a special assessment of $100 which is due

3  immediately.  Any unpaid balance shall be due during the

4  period of imprisonment at a rate of not less than $25 per

5  quarter and pursuant to the Bureau of Prisons Inmate

6  Financial Responsibility Program.  All fines will be waived

7  in this case.

8    Pursuant to the Sentencing Reform Act, it is the

9  judgment of this Court that Andres Matias Bermudez is hereby

10  committed on Count 1 of the Information to the custody of

11  the Bureau of Prisons for a term of 190 months.

12    The Court recommends that the Bureau of Prisons

13  conduct a mental health evaluation of Mr. Bermudez.

14    When he is released from prison, he will be on

15  supervised release for a period of five years under the

16  following terms:

17    He shall comply with the rules and regulations of

18  the Probation and Pretrial Services Office.

19    Shall refrain from any unlawful use of any

20  controlled substances and submit to one drug test within 15

21  days of his release from prison.

22    He shall participate in an outpatient substance

23  abuse treatment and counseling program that includes

24  urinalysis, breath and/or sweat patch testing as directed by

25  his probation officer and shall abstain from abusing alcohol

1   or prescription drugs.

2           While on supervision and with the agreement of his

3   lawyer and Mr. Bermudez, he may reside in a residential drug

4   treatment program, and he shall reside in that program until

5   discharged by the program director and probation officer.

6           He shall pay for all or part of the costs of the

7   treatment of the program.  If he is unable to pay, no

8   payment will be required.

9           While on supervision, he shall pay the special

10  assessment to the extent it has not been paid before his

11  release.

12          He shall cooperate in the collection of a DNA

13  sample.

14          And you shall submit your person, property, house,

15  residence, vehicle, papers, and other areas under your

16  control to search by probation officer or law enforcement

17  officer.

18          Failure to submit to the search may be grounds for

19  revocation.  You have to warn other occupants at the

20  premises you all live in are subject to that condition.  Any

21  search subject to this condition has to be done in a

22  reasonable time and a reasonable manner based on reasonable

23  suspicion that you violated the condition of your

24  supervision.

25          You shall participate in a program for gambling

1    addiction until discharged from that program.

2           Sir, you have the right to appeal your conviction

3    and sentence if you believe that the sentence or the

4    conviction were illegal.  Based I believe on your Plea

5    Agreement, you may have waived or limited your right to

6    appeal.  Generally those waivers are enforceable.  However,

7    if you feel it is not, you must present that to the Court of

8    Appeals and you must file your notice of appeal within 14

9    days of the judgment being entered.

10           Do you understand that, sir?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  I will authorize Probation and

13   Pretrial to disclose the presentence report to any substance

14   abuse treatment provider to facilitate his treatment for

15   narcotics addiction and dependency.  Further redisclosure

16   is -- further disclosure is prohibited without the consent

17   of this Court.

18           Are there any remaining counts that need to be

19   dismissed, Ms. Agress?

20           MS. AGRESS:  Yes, Your Honor, the government

21   believes there is one count and moves to dismiss the

22   remaining count.

23           THE COURT:  Any remaining count as it relates to

24   Mr. Bermudez will be dismissed.

25           Anything further from the government?

```
 1              MS. AGRESS:  Nothing further from the government,
 2    Your Honor.
 3              THE COURT:  Anything further, Mr. Axel?
 4              MR. AXEL:  Yes, Your Honor.
 5              We would request two recommendations from the
 6    Court as part of the sentence:
 7              One is to recommend a placement convenient to
 8    Palmdale, California, where his family resides; and the
 9    second is to recommend that he be offered participation in
10    the RDAP treatment program.
11              THE COURT:  I will make a recommendation as it
12    relates to RDAP.  I don't know if I can do a recommendation
13    as to Palmdale.  Is there a prison that's close to Palmdale?
14    Is it Lompoc?
15              MR. AXEL:  Victorville.
16              THE COURT:  I will make a recommendation that he
17    serve his time in Victorville.
18              It's only a recommendation, sir.  I can't order
19    the prison to do that, but I will make that recommendation.
20              I will make the recommendation as it relates to
21    RDAP, although in the interest of full disclosure, sir,
22    based on your criminal history, you may not be eligible, but
23    I will make the recommendation.  I think you would benefit
24    from it.  So I will make that recommendation.
25              Anything further, Mr. Axel?
```

1          MR. AXEL:  No, Your Honor.

2          THE COURT:  Thank you, all.

3          Good luck to you, sir.

4     (Proceedings concluded at 4:01 p.m.)

5                    --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE


    I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings held in the above-entitled matter and that the

transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.


Date:  November 9, 2022.




                    _/S/ CHIA MEI JUI_____

                    Chia Mei Jui, CSR No. 3287